731 A.2d 818 (1999)
GENERAL DATACOMM INDUSTRIES, INC., Plaintiffs,
v.
STATE OF WISCONSIN INVESTMENT BOARD, Defendants.
Civil Action No. 16923.
Court of Chancery of Delaware, New Castle County.
Submitted: February 1, 1999.
Decided: February 1, 1999.
Revised: February 5, 1999.
P. Clarkson Collins, Jr., Lewis H. Lazarus, of Morris, James, Hitchens & Williams, Wilmington, Delaware, for Plaintiffs.
Stuart M. Grant, John C. Kairis, of Grant & Eisenhofer, Wilmington, Delaware, for Defendants.

OPINION
STRINE, Vice Chancellor.
In this matter, the plaintiff, General DataComm Industries, Inc., ("GDC"), a Delaware corporation, seeks declaratory and injunctive relief regarding the validity of a bylaw proposed for consideration at GDC's upcoming annual meeting by the defendant, State of Wisconsin Investment Board ("SWIB"). The proposed "Repricing Bylaw" provides as follows:
Option Repricing. [GDC] shall not reprice any stock options already issued and outstanding to a lower strike price at any time during the term of such option, without the prior approval of the shareholders.
Compl. ¶ 8.
GDC contends that this proposed Repricing Bylaw "restricts unlawfully and in a material way the directors' statutory power and authority, as well as the directors' fiduciary duty, to make decisions on matters of management policy. Because no provision limiting the board's managerial authority is contained in the GDC certificate of incorporation, SWIB's proposed Repricing Bylaw is invalid." Compl. ¶ 15.
Before me now is GDC's motion to expedite proceedings, which was filed on January 28, 1999. GDC's annual meeting is scheduled for February 4, 1999.
According to GDC, "[t]his matter needs prompt resolution so that GDC is not required to suffer a facially invalid bylaw and its directors are not impaired in the management of [GDC's] incentive compensation program for recruitment and retention of key employees due to uncertainty, as long as this dispute remains unresolved, over their authority to act without stockholder approval." Pl.'s Mot. ¶ 9.
After a consideration of GDC's motion, I believe that the issues raised in its complaint are not yet ripe for judicial resolution and therefore deny its motion for expedited *819 proceedings. However, in the event that the Repricing Bylaw is adopted by the GDC stockholders, I will promptly, upon renewed application by GDC, consider whether a schedule for expedited proceedings to address the issues raised by its complaint should be put in place.

II.
SWIB first submitted the Repricing Bylaw to GDC for consideration on September 2, 1998. According to GDC, Securities and Exchange Commission ("SEC") rules require GDC to include the Repricing Bylaw proposal in GDC's proxy materials unless an applicable SEC exclusion applies.
Throughout the fall, GDC attempted to obtain SEC approval to exclude the Repricing Bylaw proposal from its proxy materials. In particular, GDC argued that exclusion was proper under SEC Rule 14a-8(i)(1), which enables exclusion if the "proposal is not a proper subject for action by shareholders under the laws of the jurisdiction of the company's organization." Compl. ¶ 11, Ex. B.
SWIB, through the Delaware law firm of Grant & Eisenhofer, disputed this contention. On December 9, 1998, the SEC advised GDC that it could not exclude the Repricing Bylaw from its proxy materials on the basis of Rule 14a-8(i)(1), stating: "Neither counsel for you nor for the proponent has opined as to any compelling state law precedent. In view of the lack of any decided legal authority the Division has determined not to express any view with respect to the application of rule 14a-8(i)(1) to the proposal." Compl. ¶¶ 12-13, Ex. D.
On December 14, 1998, GDC sent its stockholders proxy materials setting forth SWIB's proposed Repricing Bylaw, SWIB's supporting statement, and the management response of GDC. Compl. ¶ 14, Ex. E. A particularly pertinent part of the management response provides:
Requiring the Corporation to submit option repricing to stockholders at the next annual meeting or at a special meeting is both cumbersome and untimely and would effectively eliminate the ability to reprice options for employees who are otherwise leaving their employment. The Corporation has also been advised by its Delaware counsel that in their opinion, the proposal if implemented would violate Delaware law since such restrictions are only permitted in the Certificate of Incorporation. Should the stockholders approve the proposal, the Corporation reserves the right to challenge its validity in appropriate Delaware court proceedings.
ACCORDINGLY, THE BOARD OF DIRECTORS UNANIMOUSLY RECOMMENDS THAT THE STOCKHOLDERS VOTE AGAINST THE PROPOSED BYLAW ADDITION RESTRICTING OPTION REPRICING.
Compl. ¶ 14, Ex. E at 14.
On January 22, 1999, some three weeks after the Delaware Supreme Court issued its decision in Quickturn Design Sys., Inc. v. Shapiro, Del.Supr., Nos. 511, 512, 721 A.2d 1281, (Dec. 31, 1998), GDC wrote SWIB asking it to withdraw the Repricing Bylaw on the ground that Quickturn made it clear that the Repricing Bylaw was invalid, or in the alternative, to advise the GDC stockholders that the proposed Repricing Bylaw was invalid. Three days later, GDC wrote to the SEC to advise it of the Quickturn decision and to urge it to reconsider GDC's request to exclude the Repricing Bylaw from its proxy materials. GDC has heard back from neither SWIB nor the SEC.
On January 28, 1999, GDC brought this action seeking declaratory and injunctive relief, to wit: a declaratory judgment that the Repricing Bylaw is invalid; a declaratory judgment that the SWIB proxy discussion of the Repricing Bylaw is false and misleading; an order enjoining SWIB from soliciting votes for the Repricing Bylaw or otherwise seeking adoption of that Bylaw; an order directing that supplemental proxy materials be sent to GDC stockholders advising them of the removal of the Repricing Bylaw from consideration at *820 the annual meeting; and an order permitting GDC to adjourn or postpone the meeting or any vote on the Repricing Bylaw pending the adjudication of its claims in this case. Compl. pp. 8-9, ¶¶ A-F.
Earlier today, an office conference was held to consider GDC's motion for expedited proceedings.

III.
GDC seeks to have this court determine the validity of a yet to be adopted bylaw. Therefore, I must weigh the reasons "for not rendering a hypothetical opinion .... against the benefits to be derived from the rendering of a declaratory judgment." Stroud v. Milliken Enter., Inc., Del.Supr., 552 A.2d 476, 480 (1989). Even in a situation where more substantial corporate interests were at stake, I would be reluctant to grant an advisory opinion in a situation like this. In this matter, where no irreparable harm is threatened, prudence dictates that judicial action regarding whether the Repricing Bylaw is valid should await an affirmative stockholder vote.
The situation before me now is similar to that faced by Vice Chancellor Jacobs in Diceon Elec., Inc. v. Calvary Partners, Inc., L.P., Del.Ch., C.A. No. 11862, Jacobs, V.C., 1990 WL 237089 (Dec. 27, 1990), and his application of Stroud's teachings therein is instructive. In Diceon, Calvary Partners proposed a bylaw providing for certain director qualifications. If adopted, the bylaw would have imposed qualifications that most or all of Diceon's incumbent board members could not meet, potentially forcing their removal. Therefore, Diceon sought a declaration that the proposed bylaw was invalid because it contravened the company's certificate of incorporation.
While Vice Chancellor Jacobs admitted of the possibility that formal shareholder approval may not always be required before adjudication of the validity of a challenged bylaw, he held that where "the Court is asked to adjudicate the validity of a proposed measure that has not been  and may never be  adopted, compelling reasons to justify judicial intervention must be shown." Diceon, letter op. at 5-6.
Applying this test to a bylaw which, if adopted, threw into doubt as important an issue as the composition of Diceon's board of directors, Vice Chancellor Jacobs concluded:
No such compelling reasons are shown here. Despite Diceon's contrary assertion, its shareholders do not need an adjudication of the by-law proposal's validity in order to cast an informed vote. The requisite information can be provided by the parties themselves, by disclosing in their proxy materials their respective positions concerning the legality of the proposal. Nor has Diceon shown that a post-meeting adjudication would unduly risk disrupting the corporation's affairs such that earlier intervention is mandated as a matter of practical necessity. Any adjudication (whether in a § 225 action or otherwise) would occur on an expedited schedule consistent with the Court's other commitments. And any claim of potential disruption occasioned by two groups of directors, each claiming to be lawfully in office, is speculative at this point and can be controlled by this Court's injunctive processes.
Diceon, letter op. at 6; see also Stroud, 552 A.2d at 481 (finding unripe a request for declaratory judgment that a board's decisions with respect to the disclosure of certain matters to stockholders were proper in advance of any dispute about that issue; finding that the parties had "inappropriately drawn the trial court into the granting of an advisory opinion upon a significant issue of corporation law which... was clearly not ripe for judicial intervention").
The reasoning of Diceon is fully applicable to this case. As in Diceon, the stockholders can cast an informed vote if the proxy materials disclose that there are differing views regarding the validity of the Repricing Bylaw. In fact, the GDC materials already state GDC's view that the Repricing Bylaw is invalid. Compl. ¶ 14, Ex. E at 14.
*821 As in Diceon, a post-meeting adjudication would not unduly disrupt the corporation's affairs. At most, the Repricing Bylaw will inhibit the GDC board's ability to reprice options in the event that in the board's business judgment such repricing becomes necessary in the period between the Repricing Bylaw's adoption at the annual meeting (if that occurs) and a post-adoption adjudication of its validity by this court. The speculative nature of these eventualities, the availability of prompt injunctive relief, and the fact that this court has committed to consider promptly a request to expedite a post-adoption adjudication eliminates any necessity for a pre-adoption adjudication of the Repricing Bylaw's validity.
In regard to GDC's need for prompt action by this court, I also note that GDC has been aware of the Repricing Bylaw since September 2, 1998, aware of Quickturn for nearly a month, and waited until January 28, 1999  a week before the annual meeting  to seek relief from this court. This suggests that the need for judicial intervention was not viewed as urgent by GDC until very recently.
This lack of urgency cuts against the need to determine a potentially important issue of Delaware law in haste. It may be that GDC is correct in stating that the Repricing Bylaw is obviously invalid under the teaching of Quickturn. But the question of whether a stockholder-approved bylaw that can potentially be repealed at any time by the GDC board of directors exercising its business judgment, see 8 Del.C. § 109(a)[1], is clearly invalid under the teaching of a case involving a board-approved contractual rights plan precluding, by contract, a new board majority from redeeming the rights under the plan until six months after election seems to me to be a question worthy of careful consideration.[2]
As a result, I believe that GDC has not shown a compelling justification sufficient to persuade me to rule on its claims at this time. My reticence to issue a ruling now is, I must admit, also influenced by my reluctance to encourage corporations to *822 seek advisory opinions about important issues of Delaware corporation law as a method of shaping their annual meeting proxy materials. Stroud, 552 A.2d at 479 (Declaratory Judgment Act not to be used as a means of obtaining advisory rulings from Delaware courts). If this option were routinely available, this court could find itself playing a parallel role to the SEC, which is regularly involved, pursuant to its statutory and regulatory authority, in the proxy preparation process. This court's traditional commitment to prompt justice should ordinarily be sufficient to address any legitimate corporate interests threatened by the adoption by stockholders of an invalid bylaw. Absent an imminent threat of irreparable injury, there seems to be no need and much risk for this court to step into the void when the SEC concludes that state law is not clear enough for its Rule 14a-8(i)(1) to exclude a proposal. The SEC's judgment in such a situation would suggest that the issue involved is of a difficult nature and that it deserves careful scrutiny: that is, that the issue is of precisely the sort about which this court should be reluctant to opine until the issue is ripe for judicial resolution. Cf. Stroud, 552 A.2d at 481 (finding that unripe claim raising issues "novel and important ... to Delaware corporate law" should be dismissed).
I recognize that as an adjunct to its claim for declaratory relief GDC has also brought certain requests for injunctive relief against SWIB. To the extent that these claims involve SWIB's alleged failure to disclose that the Repricing Bylaw is invalid, I believe Diceon's reasoning in this respect is on point  the GDC stockholders are aware of GDC's view that the proposal is invalid. As indicated, I am also persuaded that GDC is not threatened by imminent, irreparable harm. Therefore, expedited consideration of its injunction claims is not necessary. In re Santa Fe Pacific Corp. Shareholder Litig., Del.Ch., C.A. No. 13778, 13587, 1994 WL 586924, at *2, Jacobs, V.C. (Oct. 18, 1994) (refusing to order expedited proceedings on application to enjoin a shareholder vote on merger where a negative vote would obviate the need for any judicial review and an affirmative vote, if later shown to be tainted by proxy disclosure violations, could be judicially nullified); see also Sonet v. Plum Creek Timber Co., Del.Ch., C.A. No. 16639, 1998 WL 749445, at **2-3, Chandler, C. (Sept. 23, 1998) (absence of threatened irreparable injury not remediable by final injunctive or monetary relief justifies denial of motion for expedited proceedings).

IV.
For the foregoing reasons, GDC's motion to expedite proceedings is hereby DENIED. IT IS SO ORDERED.
NOTES
[1] Under § 109(a) of the Delaware General Corporation Law, the GDC certificate may permissibly vest authority to amend the corporation's bylaws in its board of directors and at oral argument GDC's counsel indicated that the GDC certificate so empowers its board. The question of whether a stockholder-approved bylaw may be repealed by a board of directors with such authority has not clearly been answered by a Delaware Court. However, the Supreme Court's decision in Centaur Partners, IV v. Nat'l Intergroup, Inc., Del.Supr., 582 A.2d 923, 929 (1990) and the views of a learned commentator suggest that the affirmative answer may be the correct one. Lawrence Hamermesh, Corporate Democracy and Stockholder-Adopted By-Laws: Taking Back the Street?, 73 Tul.L.Rev. 409, 467-479 (1998). But see 1 R. Franklin Balotti & Jesse A. Finkelstein, The Delaware Law of Corporations & Business Organizations, § 1.11 at 1-16 (1998) (suggesting that the negative answer is correct).
[2] At minimum, the question would seem to require consideration of several provisions of the Delaware General Corporation Law, including § 102, § 109, § 141, § 153, and § 157, as well as relevant case law, including Quickturn. A recently published article which addresses the subject of stockholder-adopted bylaws in a sophisticated and comprehensive manner, states well the difficulties this subject generally raises:

Just as this nascent effort to shift the balance of corporate power from directors to stockholders through the use of stockholder-adopted by-law provisions is gaining momentum, however, it has exposed a critical dearth of precedent. For while stockholders have unquestioned power to adopt bylaws covering a broad range of subjects, it is also well established in corporate law that stockholders may not directly manage the business and affairs of the corporation, at least without specific authorization either by statute or in the certificate or articles of incorporation. There is an obvious zone of conflict between these precepts: in at least some respects, attempts by stockholders to adopt by-laws limiting or influencing director authority inevitably offend the notion of management by the board of directors. However, neither the courts, the legislators, the SEC, nor legal scholars have clearly articulated the means of resolving this conflict and determining whether a stockholder-adopted by-law provision that constrains director managerial authority is legally effective.
Related to this gap in legal authority is a less substantive but nearly as important area of legal uncertainty. Even if the stockholders could validly initiate and adopt a by-law limiting the authority of the directors, such a by-law amendment would accomplish little or nothing if the board of directors could simply repeal it after the stockholders adopted it. In some jurisdictions, of course, there is no question that such repeal can be prevented. Under many statutory schemes, the board of directors may not repeal a stockholder-adopted bylaw if that by-law expressly prohibits such repeal. In other jurisdictions, however, notably Delaware and New York, the corporation statutes allow the board of directors to amend the by-laws if the certificate or articles of incorporation so provide and place no express limits on the application of such director amendment authority to stockholder-adopted by-laws. The second significant legal uncertainty, therefore is whether, in the absence of an explicitly controlling statute, a stockholder-adopted by-law can be made immune from repeal or modification by the board of directors.
Hamermesh, 73 Tul.L.Rev. at 415-417. Cf. Int'l Brotherhood of Teamsters Gen. Fund v. Fleming Cos., Inc., 975 P.2d 907, 908 (Okla. 1999) (under a corporation law similar to Delaware's, holding that "shareholders may propose bylaws which restrict board implementation of shareholder rights plans, assuming the certificate of incorporation does not provide otherwise").