# Darlington and Wife *versus* The United States.

1. The United States has the right to take private property for public use under the power of eminent domain.

2. The Act of Congress of 3d March 1873 provided that the secretary of the treasury should purchase at private sale, or, if necessary, by condemnation in pursuance of the statutes of Pennsylvania, a suitable piece of ground in Pittsburgh for the erection of a court house, &c.; the United States condemned three separate sites, and began proceedings to condemn a fourth, with a view of selecting one of the four: *Held*, that the proceedings for condemning the fourth site were not authorized by the act.

3. An Act of Assembly passed for the purpose of carrying out this Act of Congress, provided that the United States might pay the costs and refuse to take the land, if in their judgment the compensation assessed was excessive: *Held*, that this could not be construed to justify proceedings to condemn an indefinite number of sites at once; and even if it did so, it was unconstitutional.

4. A petition filed by the United States in pursuance of the above Act of Congress for condemnation of a site under the Act of Assembly of 19th February 1849, did not contain an averment that the United States had attempted first to agree upon a valuation with the property owners: *Held*, that the court below had no jurisdiction to appoint viewers.

5. It appearing that the United States had not actually selected a site for its buildings, but was endeavoring to condemn four sites for the purpose of experimenting upon the different values: *Held*, that the proceedings to condemn a fourth site were irregular.

October 9th 1876.   Before Sharswood, Mercur, Gordon, Paxson and Woodward, JJ.   Agnew, C. J., and Williams, J., absent.

Error to the Common Pleas, No. 1, of *Allegheny county :*   Of October and November Term 1876.

In the court below this was a petition filed April 17th 1874, in the name of " David Reed, Attorney of the United States," for the appointment of viewers to appraise property selected as a site for United States government buildings.

By an Act of Congress, approved March 3d 1873 (17 U. S. St. at Large 621), it was enacted that " the secretary of the treasury be and he is hereby authorized and directed to purchase at private sale, or if necessary, by condemnation, in pursuance of the statutes

[Darlington v. United States.]

of the state of Pennsylvania, a suitable piece of ground in the city of Pittsburgh, in the state of Pennsylvania, for the erection of a building to be used for a court-house, custom-house, post-office, United States marshal's office and other government offices, the cost of the same not to exceed $300,000.

"Provided, That no money to be appropriated under this act shall be available until a valid title to such land is vested in the United States, nor until the state of Pennsylvania shall duly release and relinquish jurisdiction over the same, and exempt from taxation such property and the buildings to be hereafter erected thereon, while the same are in the possession of the United States."

In pursuance of this act, a petition was presented to the court, setting forth an Act of Assembly of 22d April 1873 (Pamph. L. 42), as follows:—

"Sect. 1. Be it enacted, &c., That the consent of the state of Pennsylvania is hereby given to the acquisition, by the United States, by purchase or by condemnation, in the same manner as land is now taken for public purposes under any general or special statute, for railroad or other purposes (and should the property which the government desires to acquire have been dedicated to a religious or charitable use, the proceeds of such property shall be invested and used to and for the same use and purpose to which the property taken was originally dedicated . or conveyed), of one or more pieces of land situated in the city of Pittsburgh, on which to erect a court-house, post-office and other government buildings and appurtenances, and the said United States shall have, hold, use, occupy and own the said land or lands when purchased, and exercise jurisdiction and control over the same, and every part thereof, subject to the restrictions hereinafter mentioned.

"Sect. 2. In case the United States shall decide to resort to condemnation in acquiring land for the purposes specified in the first section of this act, the said United States shall, in all respects, be governed by the laws of this state regulating the appropriation of private property for public use, and said laws are hereby made applicable: Provided, That the United States may pay the costs and refuse to take the land, if in their judgment the compensation assessed therefor is excessive."

The petition further averred that the United States had already made application for the condemnation of three several sites in the city of Pittsburgh, on one of which to erect a court-house, &c., and had made application for the condemnation of a separate and additional site to the three lots described in a former petition, viz. : a lot of ground bounded by Fourth avenue, Smithfield street, Third avenue and Cherry alley ; and that the United States had decided to resort to condemnation in acquiring land for such purpose. The petition then prayed the court to appoint seven freeholders to estimate the value of the piece of property in question, and to report the same

to the court. Viewers were appointed, who, on May 24th 1874, reported, among other things, that they had estimated damages for the taking and occupying of "lot No. 7, owned by William Darlington, being 120 feet on Fourth avenue by 172 feet, with buildings thereon, at the sum of $89,000." To this report Darlington filed the following exceptions:—

"2. It does not appear, from the record of the proceedings in this case, that the viewers appointed were freeholders.

"3. The petition does not aver and it does not appear that the petitioner, or the proper representative of the United States, or the United States could not agree with the owner of the property sought to be condemned for the damages likely to be done to or sustained by such owner by reason of the taking of their said property, or that any effort had been made to agree with said owner, or any of them, or that he or they were absent or legally incapacitated to enter into such an agreement.

"4. These proceedings are unauthorized. There can be no condemnation of property until a site has been selected; and the petition shows that no site has been selected, but that proceedings were taken, prior to the presenting of the petition in this case, to condemn three other sites, being separate and distinct parcels of ground, which proceedings are not disposed of.

"5. The legislature cannot delegate the right of eminent domain, as it has attempted to do in the act under which these proceedings are taken."

At the same time he appealed from the report.

On the 17th of October 1874, the court, after argument, overruled the above exceptions of Darlington, and afterwards made an order that, as it appeared that the lot of ground in question belonged to Mary C. Darlington, the wife of William M. Darlington, the above proceedings should be amended so that the damages that might be awarded should be to William M. Darlington and Mary C. his wife, in her right, and that the appeal entered and the exceptions filed should be for the benefit of William M. and Mary C. Darlington. To this order both Darlington and his wife excepted.

The court, on October 24th 1874, ordered that the appeal taken by Darlington and his wife be put at issue, to determine the question of the value of the said premises. The jury found their value to be $107,000; upon which verdict judgment was entered. Darlington and his wife then took this writ of error and also a writ of certiorari, and assigned for error, among other things, that the court below erred in overruling the second, third, fourth and fifth exceptions to the petition and report of the viewers.

*D. T. Watson* (with whom was *J. W. Over*), for Darlington and wife.—The petition was filed under the Act of 19th February 1840 (Pamph. L. 83), which requires that the petitioner should first

[Darlington v. United States.]

endeavor to agree with the owner: Reitenbaugh v. Chester Valley Railroad Co., 9 Harris 104; O'Hara v. Penna. Railroad Co., 1 Casey 448. The right of eminent domain is in derogation of common-law rights, and the statute must be strictly followed: Lance's Appeal, 5 P. F. Smith 26; Kensington v. Keith, 2 Barr 219; Cool. Const. Lim. 528. The Act of Congress only authorizes condemnation *if necessary*. Even apart from this statute, there could be no condemnation without an effort to buy at private sale, as in such case there would be no such necessity as would justify a resort to eminent domain. Necessity being the basis of the right of eminent domain (Lance's Appeal, *supra;* Kohl v. U. S., Am. L. Reg. 1876), only the land actually required may be taken. Yet this is an attempted condemnation of a fourth site, when only one is needed.

There ought first to have been a taking: O'Hara v. Penn. Railroad Co., *supra;* Neal v. P. & C. Railroad Co., 7 Casey 20. The proviso in the 2d section of the Act of 1873, *supra,* does not give the United States a roving commission to condemn any number of sites at once; at most it only gives the government a right to refuse to take a site after a fair selection and bonâ fide proceedings for its condemnation. Even then it may be doubted whether it is constitutional: Weston v. City Council of Charleston, 2 Peters 464; Neal v. Penna. Railroad Co., *supra.*

The state cannot delegate the right of eminent domain to the United States: Kohl v. United States, *supra.*

The appeal was not a waiver of the exceptions. The Act of 19th February 1849 gives the right to file exceptions with the appeal; if the exceptions are overruled the appeal proceeds.

*H. H. McCormick,* United States District Attorney, and *G. P. Hamilton,* for the United States.—The appeal was a waiver of the exceptions: Royer v. Myers, 3 Harris 87; Lentz v. Stroh, 6 S. & R. 33; Del., Lack. & W. Railroad Co. v. Burson, 11 P. F. Smith 369; Church v. N. C. Railroad Co., 9 Wright 339; Hays v. Risher, 8 Casey 169. A writ of error only brings up the trial in the court below.

The United States has an original and inherent right of eminent domain (Kohl v. United States, *supra*), and superior to the Act of 1849, *supra.* Under the Act of Congress of 1873, the United States had a right to elect to proceed by purchase or by condemnation. Reitenbaugh v. Railroad Co., *supra,* was decided when there was no appeal from the viewers; and in that case the land owner had no notice of the appointment of viewers. So in O'Hara v. Penna. Railroad Co., *supra.* In the case at bar the plaintiffs were present before the viewers. The proceedings against the other three sites were experimental and not final; they did not divest title.

As to the seventh assignment, the United States possess the power independently of the state; legislation was only necessary

to transfer jurisdiction and exemption from taxation.   A state has a right to condemn land for the United States : Gilmer *v.* Lime Point, 18 Cal. 229 ; Burt *v.* Merch. Ins. Co., 106 Mass. 356.   The United States has a right to condemn land by proceedings either in its own or in the state courts : Kohl *v.* United States, *supra.*

Mr. Justice PAXSON delivered the opinion of the court, October 23d 1876.

The right of the United States to take private property for public use is too well settled to be now disputed.   Of the numerous cases upon this subject it is sufficient to refer to Kohl *v.* The United States, which is believed to be the last, and will be found reported in the American Law Register for September 1876.   The opinion of the court was delivered by Mr. Justice STRONG, who said : "The right of eminent domain is inherent in all governments by virtue of their sovereignty.   For all purposes required by the constitution this right exists in the United States independently of any consent of the state in which the property lies."   The right itself arises from necessity, of which necessity the sovereignty taking the property must be the judge, and is qualified only by the duty of making compensation to the owner.   We are in no doubt, therefore, as to the right of the United States to take and condemn a site for public buildings in the city of Pittsburgh, under and by virtue of the Act of Congress approved March 3d 1873, entitled "An Act to purchase a site for public buildings in Pittsburgh."   Said act provides, "that the secretary of the treasury be and he is hereby directed to purchase at private sale, or if necessary by condemnation, in pursuance of the statutes of the state of Pennsylvania, a suitable piece of ground in the city of Pittsburgh, in the state of Pennsylvania, for the erection of a building to be used for a courthouse, coustom-house, post-office, United States marshal's office and other government offices, the cost of the same not to exceed three hundred thousand dollars."   Here the power to take is expressly conferred, and the mode designated by which the owner or owners may receive compensation.   The condemnation in case of a failure to purchase shall be "in pursuance of the statutes of the state of Pennsylvania."   The proviso in said act, that the state shall release and relinquish jurisdiction over the same, is fully met by the Act of Assembly of April 2d 1873 (Pamph. L. 42).   We therefore think it was competent for the United States authorities to proceed under said Act of Congress to purchase, or condemn, if necessary, a site for public buildings in the city of Pittsburgh. Have they proceeded to do so according to law ?   Without entering into a tedious recital of the facts it is sufficient to say, that it appears from the record in this case that proceedings have been commenced to condemn four different sites, with a view of selecting one out of the four.   There is no warrant for this in the Act of

[Darlington v. United States.]

Congress.   It authorizes the selection of one site, but it does not
create a roving commission to experiment upon the values of differ-
ent sites.   It is said, however, that this action can be sustained
under the second section of the Act of Assembly referred to, which
provides, "that the United States may pay the costs and refuse to
take the land, if in their judgment the compensation assessed there-
for is excessive."   The most that can be claimed for this section is,
that in case the United States should select a site, and the damages
assessed should be found excessive, and no terms could be made
with the owner, the United States might pay the costs, abandon the
proceedings and then proceed to condemn another site.   It could
not be held to justify proceedings against an indefinite number of
sites at the same time, and thus chaffering with the respective
owners for the lowest price.   And if such construction could be
successfully claimed for it the answer is that the legislature has no
such power.   The state may take the property of a citizen for pub-
lic use by virtue of its right of eminent domain, but it cannot take
it for the benefit of another sovereignty, for the use of the citizens
of the latter, nor can it delegate its right of eminent domain to
another sovereignty for such purpose.   I am aware that it has been
held otherwise in Gilmer v. Lime Point, 18 Cal. 229, and in Burt
v. The Merchants' Insurance Co., 106 Mass. 356.   But a different
doctrine was asserted in Trombly v. Humphrey, 25 Mich. 471.   In
that case, speaking of the exercise of the power by the state for
the United States, the court says : " For the one to enter the sphere
of the other and supply its officers and machinery in the exercise
of its eminent domain for the benefit of the other, would not only
be as much without warrant, but also as much a work of superero-
gation as for the United States to exercise the like authority and
employ the like agencies for a foreign country."   Again, " The
eminent domain in any sovereignty exists only for its own purposes ;
and to furnish machinery to the general government under and. by
means of which it is to appropriate land for national objects is not
among the ends contemplated in the creation of the state govern-
ments."   The foundation of the right of eminent domain is neces-
sity.   The reason utterly fails when one sovereignty proceeds to
take land for the use of another sovereignty.   This seems to be the
view taken by the Supreme Court of the United States in Kohl v.
The United States, supra.   Says Justice STRONG: " The proper
view of the right of eminent domain seems to be, that it is a right
belonging to a sovereignty to take private property for its own pub-
lic uses, and not for those of another.   Beyond this there exists no
necessity which alone is the foundation of the right."   It is not a
sufficient answer to this to say that the public buildings proposed
to be erected are for the accommodation of our own citizens.   That
is a secondary object.   The primary object is the accommodation of
the business of the United States government, and the convenience

[Darlington *v.* United States.]

and comfort of its officials. The citizens of this state have no rights in said buildings not common to all other citizens of the United States, nor have they any control over them.

These proceedings are radically defective for other reasons. The petition was evidently presented under the Act of Assembly of February 19th 1849, Pamph. L. 83, entitled "An act regulating railroad companies," and its supplements. I am not aware of any other act under which such proceedings could be instituted. The petitioners are bound by the terms of the act under which they proceeded. The eleventh section of said act provides that "when the said company (railroad company) cannot agree with the owner or owners of any land or materials for the compensation proper for the damages done, or likely to be done, or sustained by any such owner or owners of such land, * * * or by reason of the absence or legal incapacity of any such owner or owners no such compensation can be agreed upon, the Court of Common Pleas of the proper county, on application thereto by petition," may appoint viewers. In Reitenbaugh *v.* Chester Valley Railroad Company, 9 Harris 104, which was a case arising under this act, it was said by WOODWARD, J., in delivering the opinion of the court, that "when a railroad company is about to appropriate the property of individuals, they are required by the Act of Assembly of 19th of February 1849, entitled 'An act regulating railroad companies,' to apply to the owner of the property wanted, and endeavor to agree with him on the compensation, unless the owner be absent or legally incapacitated. Nor have they a right to petition the court for viewers until such effort has been made; and when they do petition they should set forth the names of the owners whose property is desired, the fact that they cannot agree on the compensation, or that the owner is absent or legally incapacitated to contract, and verify their statement by the affidavit of some person having knowledge of the facts." To the same point is O'Hara *v.* The Penna. Railroad Co., 1 Casey 448. The petition filed in this case lacks all these essential pre-requisites. There was no averment that any attempt had been made to agree with the property owners. Nor is any reason given why no such attempt had been made. It was therefore error in the court below to appoint the viewers. There was no jurisdiction.

Again, in proceedings under the Act of 1849, there must be a taking. Here there was none. There was experiment and chaffering; nothing more. A railroad company must locate its road, mark and survey the land before they can petition for a jury, and such facts must be set forth in the petition and verified by affidavit: O'Hara *v.* The Railroad, *supra;* Neal *v.* Pittsburgh & Connellsville Railroad Co., 7 Casey 19.

More might be said. What has been said is sufficient. A proceeding of this nature is out of the course of the common law, and every requirement of the statute under which it is taken must be

[Darlington *v.* United States.]

complied with: Lance's Appeal, 5 P. F. Smith 26; Dillon on Municipal Corporations, §§ 469, 470; Dwarris on Statutes 224. These proceedings are irregular from their inception.

The judgment entered in this case, and all proceedings subsequent to the filing of the petition, so far as they relate to the plaintiffs in error, are reversed and set aside.