191 A.2d 322 (1963)
The STATE of Delaware, upon the Relation of the STATE HIGHWAY DEPARTMENT, Plaintiff,
v.
GEORGE F. LANG COMPANY, a Delaware corporation, et al., Defendants.
Supreme Court of Delaware.
April 30, 1963.
Daniel L. Herrmann and William D. Bailey, Jr., of Herrmann, Bayard, Brill & Russell, Wilmington, for plaintiff.
H. James Conaway, Jr., of Morford, Young & Conaway, Wilmington, for defendant George F. Lang Company.
Before SOUTHERLAND, C. J., and WOLCOTT and TERRY, JJ.
WOLCOTT, Justice.
We accepted certification of three questions of law involving the exercise by the State of its power of eminent domain to acquire land on which to construct a freeway through the City of Wilmington. This freeway is known officially as F.A.I. -2 *323 or Interstate Route 95. Our reason for accepting the certification was that present planning and construction make it advisable for the State Highway Department to obtain possession of the land of George F. Lang Company on or about May 1, 1963, and further that the defenses raised by George F. Lang Company, if sustainable, would jeopardize the entire construction by the State Highway Department of Interstate Route 95. We considered it desirable to have the questions settled as promptly as possible.
The three questions certified are:
1. Will Interstate Route 95 in and through Wilmington be a "State Highway" for the construction of which the State of Delaware, acting through the State Highway Department, is empowered to take domain under 17 Del. C. §§ 132(c) (4), 138 and 175?
2. Is the exercise of the power of eminent domain by the State of Delaware over the defendant's property, for the purpose of constructing Interstate Route 95 in and through Wilmington, in violation of Article I, Section 8 of the Constitution of the United States and the Tenth Amendment thereto?
3. Is the measure of just compensation to which the defendant is entitled governed by State law and procedures or Federal law and procedures?
The facts upon which the answers to the certified questions depend are summarized below:
The State Highway Department has attempted by condemnation to acquire the property of George F. Lang Company for the construction of part of the highway known as Interstate Route 95 through the City of Wilmington. This highway will be a limited access expressway through Wilmington constructed in accordance with the specifications of the Federal Bureau of Public Roads. It will be part of the National System of Interstate and Defense Highways, and a connecting Delaware link between such highways in Pennsylvania and Maryland.
While the highway is a link in the National System, at the same time it will provide access to and from the central business district of Wilmington, and will meet the traffic needs of the State of Delaware for a controlled access highway in the area in which it will be located.
The construction of the highway has been duly authorized by the State Highway Department, and has been approved by the Mayor and Council of Wilmington and by the Federal Bureau of Roads, all in accordance with the provisions of the Federal Aid Highway Act of 1956.
Since 1957 the State Highway Department has proceeded with the planning, engineering and construction of the highway. It has acquired title to and possession of 643 parcels of property, and needs to acquire an additional 119 properties to complete the required right of way. To date, the total expenditure upon the project is approximately $7,536,000.
In carrying out the project, fee simple title to all properties acquired is taken in the name of the State of Delaware. All contracts are awarded by and in the name of the State of Delaware which, alone, is obligated thereunder, and which makes payments called for by such contracts with State funds. Upon the completion of the highway, its operation, control, maintenance and policing will be under the Delaware State Highway Department, except to the extent provided by the Federal Aid Highway Act. (23 U.S.C.A. §§ 116(c), 127 and 131.) The Federal Government will have no jurisdiction and control over the highway beyond that extent.
By reason of complying with the Federal Bureau of Public Roads standards, specifications and requirements, the State of Delaware will receive from the Federal Government reimbursement to the extent of 90% of the amount spent for the construction of the highway.
*324 The State Highway Department enlisted the aid of the Federal Bureau of Public Roads pursuant to 17 Del.C. §§ 173, 177. Accordingly, Federal participation in the construction of the highway came about by invitation of the State of Delaware pursuant to the Federal Aid Highway Act of 1956.
We turn now to the questions certified.

Question No. 1
The landowner argues that the State may condemn its land only if Interstate Route 95 is in fact a state highway. The State Highway Department concedes this to be the fact. We agree that 17 Del.C. §§ 132 and 138 limit the acquisition of land by the State Highway Department by exercise of the power of eminent domain for road purposes to the construction of "State Highways". The question is, therefore, whether or not Interstate Route 95 is a state highway.
Initially, we note that 17 Del.C. § 101(a) defines "State Highway" as "any road or highway or portion thereof which the Department has constructed or, of which the Department has taken or assumed control or jurisdiction." The landowner, however, argues that this definition is not controlling by reason of 17 Del.C. § 131, which provides that all public roads, etc., "constructed, acquired or accepted by the State Highway Department shall be under the absolute care, management and control of the Department." The argument is that if Interstate Route 95 after construction is not to be under the "absolute" control of the State Highway Department, then, by reason of 17 Del.C. § 131, requiring such control, it is not a "State Highway".
The landowner, to demonstrate the absence of such "absolute" control, points to the following provisions of Federal law as showing retention of some control by the Federal Government of Interstate Route 95:
(1) 23 U.S.C.A. § 116(c) authorizing the Federal Government after construction to notify the State Highway Department of improper maintenance, and if not corrected within 90 days to withhold future approval of all other Federal projects in Delaware until such correction is made;
(2) 23 U.S.C.A. § 131 authorizing the Federal Government the right to regulate advertising signs;
(3) 23 U.S.C.A. § 111 prohibiting the State Highway Department from adding points of access unless approved in advance by the Federal Government;
(4) 23 U.S.C.A. § 109 requiring the construction to be in accordance with Federal standards; and
(5) Provision of Federal law providing for the payment from Federal funds of up to 90% of the cost of the highway.
These provisions, it is argued, demonstrate that the State Highway Department does not have "absolute" control over Interstate Route 95 as required by 17 Del.C. § 131, and thus prevent it from being a "State Highway" for the construction of which the State Highway Department may exercise the power of eminent domain.
However, it is clear that fee simple title to Interstate Route 95 will remain in the State of Delaware; that it will be operated, controlled, maintained and policed by the State Highway Department; that it will provide access to and from the central business district of Wilmington meeting the needs of local as well as interstate traffic in the area; and that all contracts for its construction are made in the name of the State of Delaware and State funds are used in payment thereof, which may later be reimbursed to the extent of 90% from Federal funds. These recited facts, we think, make it clear that Interstate Route 95 serves a local as well as an interstate or Federal purpose.
The fact that such a dual purpose is served should not and does not preclude the highway from being at the same time a "State Highway" as well as a link in an *325 interstate system of highways. Indeed, we recognized as much in Tusso v. Smith, Del., 162 A.2d 185.
Furthermore, a complete answer to the landowner's contention is found in 17 Del. C. §§ 173 and 175, which authorize the State Highway Department, either alone or in co-operation with any Federal agency, to provide controlled-access facilities, and granting, inter alia, to the State Highway Department authority to exercise the power of eminent domain to that end.
If it be argued that 17 Del.C. §§ 173 and 175 are in conflict with 17 Del.C. § 131, the answer is that §§ 173 and 175 were enacted later in point of time and thus prevail over § 131. Rickards v. State, 6 Terry 573, 77 A.2d 199; Mayor and Council of Wilmington v. State ex rel. v. DuPont, 5 Terry 332, 57 A.2d 70.
Since we are of the opinion that Interstate Route 95 is a state highway, at least to the extent that land for its right of way may be acquired by condemnation, it follows that the answer to Question No. 1 is in the affirmative.

Question No. 2
The burden of the landowner's argument under this question is that since the Congress will ultimately supply 90% of the cost of Interstate Route 95 for the purpose of providing for the national defense which is expressly delegated to the Federal Government by Article I, Section 8 of the Federal Constitution and, hence, is not reserved to the States by the Tenth Amendment, it follows that the proposed public use of Interstate Route 95 is a National Public Use and not a Delaware Public Use for which the State may exercise its power of eminent domain.
We think what we had to say in answer to Question No. 1 answers also this argument since, as we pointed out, the public use involved here is at one and the same time both National and Delaware. Both the Federal Government and the State are combining their efforts to promote both types of use. Furthermore, the General Assembly, by 17 Del.C. §§ 173 and 175, specifically authorized the obtaining of land to fulfill the Delaware Public Use in cooperation with the Federal Government's efforts to provide for the Federal Public Use.
The landowner refers us to certain decisions. We think, however, that they are not at all pertinent to the facts underlying the questions before us. We note them briefly.
Initially is cited Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449, for the proposition that the United States has the power of eminent domain to acquire land for the exercise of the powers delegated to it by the Federal Constitution. There can be no question at this date of the possession of this power by the United States, or its right if it chose to do so to condemn land in the State of Delaware to build defense highways. We do not understand the Kohl case to preclude, however, the co-operation of the Federal Authority with a State in a joint enterprise providing for State as well as Federal purposes.
Next is cited People ex rel. Trombley v. Humphrey, 23 Mich. 471, which held that a state may not exercise its power of eminent domain for a purpose other than one legitimate to its own sovereignty. In the exercise of this power, therefore, a state may not take land to be used for a purpose wholly within the sphere of the United States. The condemnation of land by the State to be turned over to the United States for the erection of a lighthouse was accordingly held to be an improper exercise by the State of its power of eminent domain, since the erection of lighthouses was properly within the sphere of the United States, not the State of Michigan.
Similarly, in Darlington v. United States, 82 Pa. 382, the Supreme Court of Pennsylvania held that one sovereignty may not take land for the use of another sovereignty.
*326 None of the cited cases, we think, is applicable to the case before us. These cases go no further than to hold that where one public purpose only is to be served by the acquisition of the land, and that purpose is within the exclusive sphere of a different sovereignty, the sovereignty which has no connection with that purpose may not condemn land for its achievement.
In the case at bar there are two purposes to be subserved. One, that of National Defense may be purely Federal, but the second, the alleviation of intolerable local traffic conditions aggravated by the passing through of interstate traffic, is certainly peculiarly within the domain of the State of Delaware. There can be no doubt but that Delaware if it desired could acquire the necessary land and construct this highway at its sole expense. This being so, how is the purely Delaware Public Use destroyed, or wiped out, by the joint financial co-operation of the Federal Government which sees in the highway a link in the furtherance of National Defense?
If the position of the landowner is pushed to its logical conclusion, the result would be that there must be constructed two approximately parallel highways  one with only local use and one with purely national or interstate use. This result would be an absurdity  both financially and from the standpoint of the best use of land.
From the foregoing, it follows that the answer to Question No. 2 is in the negative.

Question No. 3
The argument of the landowner under this question is that since 90% of the funds to be used in the acquisition of land for and the construction of Interstate Route 95 will in the last analysis be Federal funds, the measure of just compensation to which the landowner is entitled should be governed by Federal law and procedures.
The difficulty the landowner labors under in this respect is that its land is being condemned by the State, fee simple title to it will be taken and remain in the name of the State, and its compensation will be paid from State funds  all in order to accomplish a State public purpose. The fact that the State may later be reimbursed in part by the Federal Government has no materiality to the problem.
The answer to Question No. 3 is that the measure of just compensation to which the defendant is entitled is governed by State law and procedures.