We answer both certified questions in the negative. The Clerk is directed to transmit this opinion to the Third Circuit.

Donald L. PELLICONE, Defendant Below, Appellant,

v.

NEW CASTLE COUNTY, upon the relation of the County Executive, Plaintiff Below, Appellee.

No. 329, 2013.

Supreme Court of Delaware.

Submitted: Feb. 26, 2014.

Decided: March 19, 2014.

 

Richard L. Abbott, Esquire, Abbott Law Firm, Hockessin, Delaware, for appellant.

Gregory B. Williams, Esquire, Austen C. Endersby, Esquire, Wali W. Rushdan, II, Esquire, Fox Rothschild LLP, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice:

The defendant-appellant, Donald Pellicone ("Pellicone"), appeals from a Superior Court judgment confirming that New Castle County ("NCC") had certain easements on Pellicone's property. NCC sought the easements' validation to carry out a flood control project targeting Little Mill Creek in New Castle County.

### Facts

In 1990, to address recurrent flooding in Little Mill Creek in Elsmere and Wilmington, the Delaware General Assembly (enacting House Bill No. 777) established the Little Mill Creek Flood Abatement Committee "to develop and implement a plan to correct flooding in the Little Mill Creek area in New Castle County." The enactment required the NCC Executive to be a member of the Committee. That bill appropriated $500,000 for a Little Mill Creek flood abatement project and further directed the Secretary of the Delaware Department of Natural Resources and Environmental Control ("DNREC") to obtain non-State funding for the project.

In 1994, NCC passed an ordinance that allocated $500,000 for the "Little Mill Creek II" drainage project. In 1995, at DNREC's request, the U.S. Army Corps of Engineers ("Army Corps") completed a Flood Control Feasibility Study for Little Mill Creek. That study recommended a "channelization" (*i.e.,* a deepening and wid-

ening) of Little Mill Creek to solve the flooding problem (the "Flood Control Project").

By 2005, the Army Corps had secured funding to begin the Little Mill Creek Flood Control Project.[1] Upon completion of the first phase of the Flood Control Project in 2011, the Army Corps began the second phase, which included Pellicone's property. As part of the second phase, NCC has been responsible for acquiring the necessary easements from the thirty-nine owners of properties impacted by the project.[2] Between 1995 and 2013, NCC contributed over $400,000 to the Flood Control Project.[3]

In December 2011, and again in July 2012, NCC informed Pellicone of its intent to obtain certain easements on his property for the Flood Control Project, pursuant to title 9, sections 1525 and 9501A of the Delaware Code.[4] On January 22, 2013, NCC adopted a resolution authorizing the County Executive to initiate condemnation proceedings against Pellicone's property to obtain the necessary easements.

### Superior Court Condemnation Decision

On March 6, 2013, NCC filed a condemnation action against Pellicone in the Superior Court. On March 12, 2013, NCC filed a notice of intent to take possession of the condemned portion of Pellicone's property. By Memorandum Opinion and Order dated May 22, 2013, the Superior Court, after accepting submissions from the parties and conducting a hearing, granted NCC possession of the affected portion. The court held that NCC had satisfied its obligations under Delaware law to condemn Pellicone's property; more specifically, the court ruled that title 9, section 1525 gave NCC the authority to condemn Pellicone's property and that NCC's exercise of its eminent domain power was for a "public use" required by title 29, section 9501A of the Delaware Code.

On June 3, 2013, the Superior Court entered a Final Award of Just Compensation. On June 21, 2013, after conducting a hearing, the court denied Pellicone's motion to stay and entered an Amended Final Award of Just Compensation.

Pellicone timely appealed to this Court. Thereafter, Pellicone moved for a stay pending appeal, which this Court denied on July 24, 2013.

### This Court's Remand

Following oral argument, on November 14, 2013, we remanded the case (but retained jurisdiction) for the Superior Court to address three questions:

1. In June 2009, the Army Corps and DNREC signed a "Project Partnership Agreement" outlining the responsibilities of each party in carrying out the Flood Control Project. NCC was not a party to that agreement. The Army Corps' "Fact Sheet" on the Flood Control Project, however, lists NCC (together with DNREC) as a sponsor of the project.

2. Thirty-eight of those property owners voluntarily granted the easements.

3. NCC's 2013 Capital Budget appropriated $523,000 for the project.

4. Del.Code Ann. tit. 9, § 1525(a) provides that "[i]n case the County Council, upon the advice of the Department of Public Works deems it advisable to widen, straighten or alter the course of any part of any small run or creek in the County, such as Chestnut Run or Little Mill Creek at Forest Park, in Christiana Hundred, the County Council and the Department of Public Works may enter upon any land for the purpose of surveying and locating the changes necessary to widen, straighten or alter the course of any part of such run or creek."

Del.Code Ann. tit. 29, § 9501A(a) provides that "[t]he policy of the provisions of this chapter pertaining to eminent domain is to ensure that eminent domain is used for a limited, defined public use."

Does Chapter 12 of the County Code require specific procedural steps in order to authorize a County flood control project?

a) If so, were those procedural requirements adhered to?

b) Can the Federal Flood Control Project legally constitute a County project?

On January 10, 2013, the Superior Court filed a Remand Opinion, answering all three questions affirmatively. The Court concluded that Chapter 12, Article 7, which applies to drainage improvements made by NCC, applied to the Flood Control Project. The court further found that the entities carrying out that project had complied with the requisite procedures prescribed by Article 7. Finally, the court determined that under Chapter 12, Article 7, the Flood Control Project legally constituted an NCC project.

The parties later filed supplemental memoranda addressing the Superior Court's Remand Opinion.

### Standard of Review

■ We review a trial court's interpretation of statutory provisions *de novo*.[5] The plain meaning of statutory language controls if the statute is found to be clear and unambiguous.[6] If a statutory provision is ambiguous, however, we consider the statute as a whole, rather than in parts, to produce a harmonious interpretation of a given provision.[7] We will not overturn a trial court's factual findings unless they are clearly erroneous and the record does not support them.[8]

### Issues on Appeal

This appeal presents four issues. First, does the Flood Control Project legally constitute an NCC project? Second, does NCC's condemnation of Pellicone's property fall within NCC's statutory eminent domain authority under title 9, section 1525? Third, is NCC's taking of Pellicone's property for a public use as defined in title 29, section 9501A? Fourth, and finally, were the procedures set forth in Chapter 12, Article 7 adhered to?

### The Flood Control Project Legally Constitutes a NCC project

■ The Superior Court correctly determined that the Flood Control Project legally constitutes an NCC project. Article 7 of Chapter 12 of the New Castle County Code (the "County Code") addresses drainage improvements made by NCC. Section 12.07.001A of the County Code provides that "[i]mprovements to public and communal watercourses, drainage systems and stormwater management basins by New Castle County shall only be made:

1. To protect persons and property (specifically buildings) from serious harm and significant damage from flooding caused by storms of up to one hundred (100) year frequency...."[9]

Section 12.07.001C further specifies that any "[i] Improvements made with bond revenues must have a useful life of at least ten (10) years."[10]

As the Superior Court found, Little Mill Creek (and in particular the area that includes Pellicone's property), has been af-

---

5. *Cannon v. State,* 807 A.2d 556, 559 (Del. 2002).

6. *In re Krafft–Murphy Co., Inc.,* 82 A.3d 696, 702 (Del.2013).

7. *Id.*

8. *Lawson v. State,* 72 A.3d 84, 88 (Del.2013).

9. New Castle Cty. C. § 12.07.001A.

10. *Id.* § 12.07.001C.

fected by damaging floods caused by 50–year and 100–year storms.[11] In authorizing the bond issuance to fund the Flood Control Project in 1994, NCC made an express finding that the "normal life of said improvements is not less than ten (10) years." Moreover, nothing in Chapter 12, Article 7 prohibits NCC from collaborating with other entities when undertaking improvements to watercourses, drainage systems or stormwater management basins.[12]

Pellicone contends that Chapter 12, Article 6 of the County Code, which addresses the maintenance of watercourses, precludes NCC from carrying out any improvements of watercourses under the jurisdiction of the Army Corps, and that Little Mill Creek is under the jurisdiction of the Army Corps.[13] Section 12.06.001C provides that "[i]t is the responsibility of the County to keep all nontidal streams in New Castle County, which are not under the jurisdiction of the U.S. Army Corps of Engineers, State of Delaware, DelDOT, a tax ditch organization, municipality, or any maintenance organization, open and free flowing." [14]

But, even if Article 6 were read to prohibit NCC from maintaining Little Mill Creek,[15] no reason is shown to extend that prohibition to an improvement project that falls under Article 7. Article 7's plain language contains no limitation on the watercourses, drainage systems or stormwater management basins to which NCC may make improvements. Nor do Sections 12.06.001C and D indicate that those subsections' limitations on NCC's maintenance authority, if they are limitations, extend to other articles of Chapter 12. Accordingly, there is no basis to read into Article 7 an implied limitation on NCC's authority to undertake necessary improvements to watercourses, drainage systems and stormwater management basins.[16]

### The Flood Control Project Falls Within NCC's Eminent Domain Power

■ Turning to the second issue, we conclude that the plain language of title 9, section 1525(a) authorizes NCC to condemn Pellicone's property for purposes of implementing the Flood Control Project. Title 9, section 1525 provides that NCC may condemn property when it "deems it advisable to widen, straighten or alter the

---

11. *Pellicone v. New Castle County*, Super. Ct., C.A. No. N13C–03–073 at 10 (Jan. 10, 2014). Pellicone does not contest this finding.

12. *See Pellicone v. New Castle County*, Super. Ct., C.A. No. N13C–03–073 at 16 (Jan. 10, 2014).

13. Pellicone does not contest that the Flood Control Project is an "improvement" project.

14. New Castle Cty. C. § 12.06.001C. Section 12.06.001D also provides that "[t]he County will assume the responsibility for maintaining an open and free flowing condition in all nontidal streams, communal watercourses, and drainage systems which are necessary for proper drainage in the discretion of the County, and subject to funding availability and which are not already maintained by another public agency, tax ditch association, or maintenance organization...."

15. It is not entirely clear that Article 6 bars NCC from participating in the maintenance of watercourses that fall under the jurisdiction of other entities. Rather, 12.06.001C and D identify the circumstances where NCC is responsible or "will assume the responsibility" for maintaining the open and free flow of watercourses, nontidal streams, and drainage systems.

16. Moreover, Pellicone's interpretation that NCC may not carry out an improvement project on Little Mill Creek would conflict with Del.Code Ann. tit. 9, § 1525, which expressly authorizes NCC to exercise eminent domain in order to "widen, straighten or alter the course of any part of any small run or creek in the County, such as ... Little Mill Creek...." Del.Code Ann. tit. 9, § 1525(a), (c).

course of any part of any small run or creek in the County, such as ... Little Mill Creek...." [17] The Flood Control Project involves "widening" and "deepening" Little Mill Creek. It is undisputed that NCC may condemn Pellicone's land to "widen" Little Mill Creek. Therefore, the question is whether NCC may do so in order to "deepen" Little Mill Creek. Stated differently, does "deepening" constitute "alter[ing] the course of any part" of Little Mill Creek?

Webster's Dictionary generally defines "course" as "the path over which something moves." [18] The dictionary also defines "course" as "a channel in which water flows." [19] To "alter" means "to change." [20] Title 9, section 1525 of the Delaware Code, plainly read, covers "deepening," because by deepening Little Mill Creek, NCC is "changing" the creek's path or channel. Thus, NCC has the authority, under title 9, section 1525, to condemn Pellicone's property for the Flood Control Project. [21]

### The Condemnation of Pellicone's Property is for a Public Use

■ Third, the Superior Court correctly found that NCC's taking was for a public use, as title 29, section 9501A required. That provision prohibits any political subdivision of the state from using eminent domain "other than for a public use." [22]

Subsection (c) of that provision defines "public use," as, *inter alia,* the "possession, occupation, or utilization of land by the general public or by public agencies." "Agency" is further defined as "any department, agency or instrumentality of the State or of a political subdivision of the State...." [23] Pellicone argues that because the Flood Control Project is an Army Corps project, the condemnation of his property is not for a "public use" as statutorily defined.

Pellicone's argument overlooks the factual realities of NCC's involvement in the Flood Control Project. First, title to the easements taken on Pellicone's property will be vested in NCC. [24] Second, between 1995 and 2013, NCC contributed more than $400,000 to the Flood Control Project. Third, NCC was actively involved in deciding to involve the Army Corps in the project. Fourth, the Army Corps listed NCC as a Flood Control Project sponsor on a project fact sheet. Fifth, NCC is preparing designs that will be incorporated into the project plans. Finally, once the Flood Control Project is completed, NCC will be responsible for maintaining its infrastructure. These undisputed facts support the Superior Court's determination that NCC will possess, occupy, and utilize the easements taken from Pellicone's property. [25]

17. Del.Code Ann. tit. 9, § 1525(a), (c).

18. Webster's Third New International Dictionary at 522.

19. *Id.*

20. Merriam Webster, *available at:* http://www.merriam-webster.com/dictionary/alter.

21. Because we conclude that the condemnation is authorized by the plain language of title 9, section 1525, it is unnecessary to address Pellicone's arguments about the historical legislative intent behind that statute. *See Arnold v. Soc'y for Sav. Bancorp, Inc.,* 650 A.2d 1270, 1287 (Del.1994) ("A court should

not resort to legislative history in interpreting a statute where statutory language provides unambiguously an answer to the question at hand.").

22. Del.Code Ann. tit. 29, § 9501A(b).

23. Del.Code Ann. tit. 29, § 9501(b).

24. Complaint, *Pellicone v. New Castle County,* Super. Ct., C.A. No. N13C–03–073 (Mar. 6, 2013).

25. Pellicone's reliance on *State Highway Dep't v. George F. Lang Co.,* 191 A.2d 322 (Del. 1963) is misplaced. First, in *George F. Lang,*

## The Procedural Requirements under Chapter 12, Article 7 of the County Code Were Satisfied

■ Finally, having determined that NCC is authorized to condemn Pellicone's property for the Flood Control Project, we must consider whether the procedural requirements of Chapter 12, Article 7 of the County Code were satisfied. We conclude that they were.

Section 12.07.002A of the County Code sets forth the following approval procedure for stream and watercourse improvements:

1. A study will be made to establish and map the floodplain and delineate the wetlands along the watercourse.

2. A typical cross section of the improvements will be developed showing approximate widths, depths and type of construction.

3. Order of magnitude costs for proposed improvements will be developed.

4. A public hearing will be held with those property owners adjacent to the watercourse to obtain their comments regarding the drainage study and the proposed improvement(s).

5. An informal meeting will be held with County Council to reach a consensus concerning proceeding with project development and a determination will be made to proceed or abandon the proposed improvement(s).[26]

Pellicone claims that because the Army Corps, rather than NCC, completed steps one through three, the procedural requirements were not properly followed.[27] Pellicone is incorrect. First, the Flood Control Project is jointly sponsored and funded by NCC, the Army Corps, and other entities. Second, Section 12.07.002A does not require that NCC itself conduct the requisite studies. It was reasonable for NCC, when undertaking a Flood Control Project in cooperation with an entity possessing particular expertise in carrying out such projects, to allow that entity to complete the required studies. NCC undertook the Flood Control Project in cooperation with the Army Corps, which in turn completed the studies required by Section 12.07.002A. Accordingly, we hold that the requisite procedural requirements were satisfied.

Pellicone also claims that because NCC did not approve the Flood Control Project by ordinance or by resolution as title 9, section 1151 and County Council Rule 2.1.3 required,[28] the Flood Control Project was not properly authorized. To the contrary, the record shows that the NCC Council appropriated funds for the Flood Control Project by passing ordinances. Moreover, the Council enacted a resolution authorizing the institution of the condemnation action to acquire the easements on Pellicone's property.

---

this Court held that the State did have the authority to condemn property to construct a federal highway, even where up to 90% of funds would be provided by the federal government. Second, *George F. Lang* did not involve an interpretation of Del.Code Ann. tit. 29, § 9501A.

**26.** New Castle Cty. C. § 12.07.002A.

**27.** Because Pellicone challenged NCC's compliance with steps four and five only in its Reply Memorandum, we do not address that challenge.

**28.** Del.Code Ann. tit. 9, § 1151 provides that "[a]ll actions of the County Council which shall have the force of law shall be by ordinance." New Castle County Council Rule 2.1.3 provides that "[r]esolutions contain legislation that expresses intent, but do not have the force of law including, but not limited to, congratulatory, condolences, land use plans deemed in compliance with the New Castle County Code, refund of taxes and sewer charges, and the authorization of contracts."

*Conclusion*

The judgment of the Superior Court is affirmed.