SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5256

March 12, 2019

Richard A. Forsten, Esquire
Saul Ewing Arnstein & Lehr
P.O. Box 1266
Wilmington, DE 19899-1266

Max B. Walton, Esquire
Connolly Gallagher
267 East Main Street
Newark, DE 19711

FILED PROTHONOTARY
SUSSEX COUNTY
2019 MAR 12 A 10: 35

Re: *Ocean Bay Mart, Inc. v. The City of Rehoboth Beach*
Civil Action No. S18A-02-001 ESB

Dear Counsel:

This is my decision on Petitioner Ocean Bay Mart, Inc's Petition for a Writ of

Certiorari and the Motion to Dismiss that petition filed by Respondents the City of

Rehoboth Beach, Delaware, and the Commissioners of the City of Rehoboth Beach

in this case involving a proposal by Ocean Bay Mart to build a 63-unit condominium

development to be known as "Beach Walk" on a 7.83 acre parcel of land that it owns

at 20673 Coastal Highway, Rehoboth Beach, Delaware. "Beach Walk" consists

largely of single-family detached condominium units, making it look like a residential

subdivision.

There are two issues in this case. The first issue is whether "Beach Walk" is

subject to the City's subdivision requirements even though it is a condominium development. The City Building Inspector thought so. The City Board of Adjustment did not think so. The City Planning Commission and City Commissioners both thought so, reasoning that 25 *Del. C.* §81-105(b)(1)'s statement that a condominium unit, together with its interest in the common elements, constitutes for all purposes a separate parcel of real estate and, as such, mandated compliance with the City's subdivision requirements. Section 81-105 deals with the titling and taxation of condominium units and common elements. Ocean Bay Mart disagrees with the Commissioners' reasoning, arguing that §81-105(b) has no application to the City's subdivision requirements. Ocean Bay Mart is seeking certiorari review of the Commissioners' decision.

The second issue is whether City Ordinance 1116-01 is applicable to "Beach Walk." Ordinance 1116-01 provides that "no more than one single-family detached dwelling with its customary non-habitable accessory buildings may occupy or be constructed upon any lot." Ordinance 1116-01 was introduced by the Commissioners after Ocean Bay Mart filed its application for site plan review with the Building Inspector and adopted by the Commissioners before, but not relied upon by, the Commissioners when they denied Ocean Bay Mart's appeal of the Planning Commission's decision. If Ordinance 1116-01 applies to "Beach Walk," then "Beach

2

Walk" would be subject to the City's subdivision requirements. The Commissioners argue that it does, making Ocean Bay Mart's request for certiorari review moot. Ocean Bay Mart argues that it has no application to "Beach Walk."

I have decided that I cannot now determine whether Ordinance 1116-01 applies to "Beach Walk," reasoning that this issue should, in the first instance, be presented to and decided by the appropriate City officials. I have concluded that the Commissioners' reliance on 25 *Del. C.* §81-105(b)(1) was an error of law because §81-105(b)(1) deals with the titling and taxation of condominium units and common elements and not subdivisions.

## STATEMENT OF FACTS

Ocean Bay Mart is the owner of a retail shopping center located on the east side of Route 1 in Rehoboth Beach known as "Ocean Bay Plaza" (the "Property"). Ocean Bay Mart proposes to redevelop the Property by eliminating the shopping center and replacing it with 63 residential condominium units on the 7.83-acre Property to be called "Beach Walk." "Beach Walk" would consist of 58 single-family detached units and five single-family attached units. On June 18, 2015, Ocean Bay Mart filed its site plan application (the "Plan") for review and approval by the City of Rehoboth Beach, Delaware.

The City Building Inspector placed the application on the Planning

Commission's November 2015 agenda for review and a public hearing. Shortly thereafter, the Building Inspector removed the application from the agenda, claiming that Ocean Bay Mart's Plan needed to be resubmitted as a "subdivision" plan instead of a site plan. Ocean Bay Mart then appealed the Building Inspector's decision to the Board of Adjustment.

### The Board of Adjustment Decision

The specific issue before the Board of Adjustment was the meaning of Footnote 1 of Attachment 1 to the Table of Use Regulations to Chapter 270 of the City Code. Footnote 1 provides "that no more than one main building may be erected on a single lot." The Building Inspector had concluded that Footnote 1 limited Ocean Bay Mart to one building on its 7.83-acre Property. Thus, to get more buildings, Ocean Bay Mart would have to go through the subdivision process. The Board concluded that Footnote 1 was ambiguous and reversed the Building Inspector's decision. The practical effect of the Board's decision was to allow Ocean Bay Mart to put more than one building on its Property. The Board's decision was consistent with the City's past practice of not requiring a condominium plan to be reviewed as a subdivision plan and instead allowing condominium plans to be reviewed and approved under the site plan process. No one appealed the Board's decision.

4

Following the Board's decision, the matter was placed on the Planning Commission's August 12, 2016, agenda so that the site plan review could be completed. However, instead of reviewing the Plan, the Commission asked for briefing on whether it was bound by the Board's decision. The Briefing was done and the Commission met on January 13, 2017. There were three issues before the Commission. One, whether the Commission was bound by the Board's decision. Two, whether "Beach Walk" was subject to subdivision review. Three, whether "Beach Walk" was required to be zoning compliant. The Commission members discussed 25 *Del. C.* §81-105(b)(1), the condominium form of ownership, a proposed ordinance that would become Ordinance 1116-01, and the City's subdivision requirements. Ultimately, the Commission refused to consider Ocean Bay Mart's Plan and concluded that "Beach Walk" would have to go through subdivision review with one commissioner stating, "that if it looks like a subdivision, and it smells like a subdivision, then it is a subdivision." In making this determination, the Commission relied upon 25 *Del. C.* §81-105(b)(1), which states:

> (b) In a condominium or planned community:
>
>     (1) If there is any unit owner other than a declarant, each unit that has been created, together with its interest in the common elements, constitutes for all

purposes a separate parcel of real estate.

The Commission told Ocean Bay Mart that unless it submitted a full "subdivision" plan for review within 60 days, it would consider the Plan rejected. Ocean Bay Mart refused to submit a subdivision plan and instead appealed the Commission's decision to the City Commissioners.

## The City Commissioners' Decision

The City Commissioners retained independent counsel to advise them in this matter because the City Solicitor, who usually advises them, was representing the Planning Commission in the appeal. Following extensive briefing on the matter, on January 26, 2018, the City Commissioners voted 4-2 to uphold the Planning Commission's decision, stating:

> [t]his decision [is] based on the fact that the Planning Commission made the proper decision in applying 25 *Del. C.* §81-105(b) to conclude that the creation of 63 condominium units from one acre of land is the legal equivalent of creating 63 parcels of real estate, which require subdivision approval.

In coming to this conclusion, the Commissioners claimed that the Board of Adjustment's decision could be ignored because it did not consider 25 *Del. C.* §81-105(b)(1). Following the Commissioners' decision, Ocean Bay Mart then petitioned this Court for certiorari review.

6

## Ordinance 1116-01

While Ocean Bay Mart's Plan was before the Planning Commission, the City Commissioners began considering an amendment to the City Code in response to the Board of Adjustment decision. The amendment would ultimately become Ordinance 1116-01, the ordinance upon which the city bases its Motion to Dismiss. Ordinance 1116-01 provides that "no more than one single-family detached dwelling with its customary non-habitable accessory buildings may occupy or be constructed upon any lot."

Neither the Planning Commission nor the City Commissioners brought up Ordinance 1116-01 when considering Ocean Bay Mart's Plan. Hence, the City Commissioners' decision makes no reference to Ordinance 1116-01 even though it was enacted before they considered and ruled on Ocean Bay Mart's appeal of the Planning Commission's decision.

## DISCUSSION

### I.    The Commissioners' Motion to Dismiss

The Commissioners have moved pursuant to Superior Court Civil Rule 12(b)(6) to dismiss Ocean Bay Mart's Petition for a Writ of Certiorari, arguing that the petition is moot because Ordinance 1116-01 applies to and prevents Ocean Bay Mart's "Beach Walk" development from moving forward without going through the

City's subdivision process. Ocean Bay Mart argues that Ordinance 1116-01 by its own language does not apply to "Beach Walk."

The City, like most municipalities, has a land use process consisting of a Building Inspector, Board of Adjustment, Planning Commission, and Commissioners. Thus far, the issues surrounding "Beach Walk" have focused on the subdivision process and involved the meaning and application of Footnote 1 to the Table of Use Regulations to Chapter 270 of the City Code and 25 *Del. C.* §81-105(b)(1). The Board of Adjustment finally decided the meaning and application of Footnote 1. The Commissioners decided the meaning and application of §81-105(b)(1). The Commissioners' decision is before me for certiorari review and I will address that in the second part of this decision. In the middle of the land use process for "Beach Walk," the Commissioners passed Ordinance 1116-01. The meaning and application of Ordinance 1116-01 to "Beach Walk" have not been addressed by any City official as part of the land use process. It should be addressed there first and not raised here for the first time on certiorari review. For me to address it now would require me to give an advisory opinion, which would not be appropriate.[1]

II. Ocean Bay Mart's Writ of Certiorari

Ocean Bay Mart is seeking certiorari review of the Commissioners' decision,

---

[1] *Stroud v. Miller Enterprises*, 552 A.2d 476, 480 (Del. 1989).

8

arguing that the Commissioners' reliance on 25 *Del. C.* §81-105(b)(1) was an error of law. The Commissioners upheld the Commission's decision, reasoning that 25 *Del. C.* §81-105(b)(1) mandates that a 63-unit condominium on one parcel of real estate is actually 63 parcels of real estate and, as such, must comply with the City's subdivision requirements. The Commissioners' decision implicates §81-105, which is part of the Uniform Common Interest Ownership Act. Section 81-105 is titled "Separate titles and taxation" and states as follows:

> (a) In a cooperative, unless the declaration provides that a unit owner's interest in a unit and its allocated interests is real estate for all purposes, that interest is personal property. That interest is subject to the provisions of homestead exemptions, even if it is personal property.

> (b) In a condominium or planned community:

> (1) If there is any unit owner other than a declarant, each unit that has been created, together with its interest in the common elements, constitutes for all purposes a separate parcel of real estate.

> (2) If there is any unit owner other than a declarant, each unit must be separately taxed and assessed, and no separate tax or assessment may be rendered against any common elements for which a declarant has reserved no development rights.

> (c) Any portion of the common elements for which the declarant has reserved any development right must be separately taxed and assessed against the declarant, and

9

the declarant alone is liable for payment of those taxes.

(d) If there is no unit owner other than a declarant, the real estate comprising the common interest community may be taxed and assessed in any manner provided by law.

## Standard of Review

"Under Delaware law, a writ of certiorari is essentially a common law writ."[2] Its purpose "is to permit a higher court to review the conduct of a lower tribunal of record."[3] Under this common law writ, this Court has the power to quash or affirm the proceedings and to remand."[4] The "threshold qualifications for a Certiorari review . . . [are] in particular that the judgment below is final, and that there must be no other available basis for review."[5] The Court's review on *certiorari* "involves a

---

[2] *Goldberg v. City of Wilmington,* 1992 WL 114074, at *1 (Del. Super. Ct. May 26, 1992); See also *Christiana Town Ctr., LLC v. New Castle County,* 2004 WL 2921830, at *2 (Del. Dec. 16, 2004) (Citing *Shoemaker v. State,* 375 A.2d 431, 436-37 (Del. 1977); Woolley, *Delaware Practice,* Volume I, § 894. See e.g. *Hundley v. O'Donnell,* 1998 WL 842293, at *3 n. 7 (Del. Ch. Dec. 1, 1998).

[3] *Christiana Town Ctr., LLC,* 2004 WL 2921830, at *2.

[4] *Jardel Co., Inc. v. Carroll,* 1990 WL 18296, at *2 (Del. Super. Ct. Feb. 26, 1990); *State v. J.P. Ct. No. 7,* 1989 WL 31600, at *1 (Del. Super. Ct. April 3, 1989); *Breasure v. Swartzentruber,* 1988 WL 116422, *1 (Del. Super. Ct. Oct. 7, 1988) (citations omitted).

[5] *Christiana Town Ctr., LLC v. New Castle County,* 2003 WL 22120857, at *1 (Del. Super. Ct. Sept. 10, 2003). See e.g. *Adjile, Inc. v. City of Wilmington,* 2004 WL 2827893, at *1 (Del. Super. Ct. Nov. 30, 2004), *aff'd,* 2005 WL 1139577 (Del. May 12, 2005).

10

review only of errors that appear on the face of the record."[6] *Certiorari* review differs from appellate review in that an appeal "brings up the case on its merits," while a *writ* brings the matter before the reviewing court to "look at the regularity of the proceedings."[7] Thus, *certiorari* review "is not the same as review on appeal" because it "is on the record and the reviewing court may not weigh evidence or review the lower tribunal's factual findings."[8] To that end, the "transcript of the evidence below is not part of the reviewable record ... the Court cannot examine the transcript in order to evaluate the adequacy of the evidence which supports the conclusion rendered below."[9] It is the function of "the agency, not the court, to weigh evidence and

---

[6] *Luby v. Town of Smyrna*, 2001 WL 1729121, at *2 (Del. Super. Dec. 27, 2001), *citing Castner v. State*, 311 A.2d 858, 860 (Del. 1973).

[7] *Breasure*, 1988 WL 116422, at *1.

[8] *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2, *citing Reise v. Bd. of Bldg. Appeals of Newark*, 746 A.2d 271, 274 (Del. 2000).

[9] *Green v. Sussex County*, 668 A.2d 770, 773 (Del. Super. Ct. 1995), *aff'd*, 1995 WL 466586 (Del. Aug. 2, 1995). See e.g. *Matter of Butler*, 609 A.2d 1080, 1081-82 (Del. 1992) (declining to consider a transcript of the underlying Superior Court proceedings or overrule *Castner*, 311 A.2d 858, and holding that the Superior Court's order "is the entire record before us for purposes of certiorari review."). *Cf. Barbour v. Bd. of Adjustment of Bethany Beach*, 1992 WL 302292, at *2 (Del. Super. Ct. Sept. 28, 1992) (Noting that "statutory writ of certiorari is broader and allows for the filing of a transcript of the evidence" but that "a transcript could not be filed in a common law certiorari proceeding since the reviewing court was prohibited from considering the evidence before the lower tribunal.").

11

resolve conflicting testimony and issues of credibility."[10] Thus, the Court does not consider the case below "on its merits" or "substitute its own judgment for [that] of the inferior tribunal."[11] Instead, the Court's review is limited to considering "the record to determine whether the lower tribunal[:]" (a) exceeded its jurisdiction, (b) committed errors of law, or (c) proceeded irregularly.[12] A decision "will be reversed on jurisdictional grounds only if the record fails to show that the matter was within the lower tribunal's personal and subject matter jurisdiction."[13] A decision "will be reversed for an error of law ... when the record affirmatively shows that the lower tribunal has 'proceeded illegally or manifestly contrary to law.'"[14] Finally, a decision "will be reversed for irregularities of proceedings if the lower tribunal failed to create an adequate record to review."[15] The "burden of persuasion rests upon the party

---

[10] *Christiana Town Ctr., LLC v. New Castle County*, 2004 WL 1551457, at *2 (Del. Super. July 7, 2004), *aff'd*, 2004 WL 2921830 (Del. Dec. 16, 2004).

[11] *Christina Town Ctr., LLC*, 2004 WL 2921830, at *2; *Breasure*, 1988 WL 116422, at *1.

[12] *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2, *citing Reise*, 746 A.2d at 274.

[13] *Id.* at *2, *citing* Woolley, *Delaware Practice*, Volume I, § 921.

[14] *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2, *citing* Woolley, *Delaware Practice*, Volume I, § 939.

[15] *Id.* at *2, *citing* Woolley, *Delaware Practice*, Volume I, § 923.

12

attempting to show that the Board's decision was arbitrary and unreasonable."[16]

## Statutory Construction

When interpreting the language of 25 *Del. C.* §81-105(b), I have to engage in statutory construction. "The primary goal of statutory construction is to 'ascertain and give effect to the intent of the legislature.'"[17] Intent is determined by the plain language of the statute, and absent ambiguity, "there is no room for judicial interpretation and 'the plain meaning of the statutory language controls.'"[18] Indeed, "[i]n the absence of any ambiguity, the language of the statute must be viewed as conclusive of the legislative intent. The judicial role is then limited to an application of the literal meaning of the words."[19] Absent ambiguity, the Court cannot look to

---

[16] *Christina Town Ctr., LLC,* 2004 WL 1551457, at *2.

[17] *Acadia Brandywine Town Ctr., LLC v. New Castle Cnty,* 879 A.2d 923, 927 (Del. 2005) (citing *Dir. Of Revenue v. CNA Holdings, Inc.,* 818 A.2d 953, 957 (Del. 2003)); see also Norman J. Singer, *Sutherland Statues and Statutory Construction,* §78:3 (7th ed. 2015) ("The key to interpreting a ... statute is to ascertain and effectuate legislative intent as expressed in the statute. The statute's language is the best and most reliable index of the statute's meaning ....").

[18] *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust,* 28 A.3d 1059, 1070 (Del. 2011); see also Norman J. Singer, *Sutherland Statutes and Statutory Construction,* §46:1 (7th ed. 2015) ("the rules of statutory construction favor according statutes with their plain and obvious meaning and courts assume the legislature knew the plain and ordinary meanings of the words it chose to include in a statute.").

[19] *Grand Ventures, Inc. v. Whaley,* 632 A.2d 63, 68 (Del. 1993) (internal citation omitted).

13

legislative history to determine the meaning of the legislative enactment.[20] There are two other rules of statutory construction that are applicable. First, the expression of one thing but not another is interpreted to mean that omitted items were not meant to be included.[21] Second, and especially important here, zoning codes are interpreted in favor of property owners.[22]

### Section 81-105

Section 81-105 focuses, as its title and text indicate, on the titling and taxation of real estate. It does not focus on, or even address, the subdivision of real estate. The most reasonable view of §81-105(b) is that in a condominium development it sets up various categories of ownership of the units and common elements and provides for their taxation accordingly. There are several categories that §81-105(b) addresses. The first category involves unit owners and a declarant who has not reserved any development rights. Subsection (b)(1) and (2) address that situation and provide that

---

[20] *Arnold v. Society for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1287 (Del. 1994) ("A court should not resort to legislative history in interpreting a statute where statutory language provides unambiguously an answer to the question at hand."); *Pellicone v. New Castle Cnty.*, 88 A.3d 670, 675, n.21 (Del. 2014).

[21] *See, e.g., Walt v. State*, 727 A.2d 836, 840 (Del. 1999), *citing Hickman v. Workman*, 450 A.2d 338, 391 (Del. 1982).

[22] *Chase Alexa, LLC*, 991 A.2d at 1152; *Mergenthaler v. State*, 293 A.2d 287, 288 (Del. 1972).

14

a unit and its interest in the common elements is treated as a separate parcel of real estate and is taxed as such. The second category involves unit owners and a declarant who has reserved development rights in a portion of the common elements. Subsection (c) addresses that situation and provides that the declarant shall be taxed for his reservation of development rights in the common elements. The third category is if there is only a declarant. Subsection (d) addresses that situation and provides that the real estate comprising the common elements may be taxed in any manner provided by law.

It is clear that §81-105(b) focuses on the ownership and taxation of units and common elements under various scenarios. While the language "constitutes for all purposes a separate parcel of real estate" sounds enticing, I must consider it in the context in which it was made. That context is the ownership and taxation of ownership interests in common elements between unit owners and a declarant. That, in my view, makes §81-105(b) applicable to conveyancing and tax matters. That context would not make §81-105(b) applicable to subdivisions.

I have concluded that the Commissioners made an error of law when they concluded that 25 *Del. C.* §81-105(b) makes "Beach Walk" subject to the City's subdivision requirements.

## CONCLUSION

The Respondents' Motion to Dismiss is denied and their decision below is reversed and remanded for further proceedings consistent with this decision.

IT IS SO ORDERED.

_____
E. Scott Bradley

ESB/jwc