Joel KRIEGER, Individually and on
Behalf of All Others Similarly
Situated, Plaintiff,

v.

WESCO FINANCIAL CORPORATION,
Charles T. Munger, Elizabeth Caspers
Peters, Carolyn H. Carlburg, Robert
E. Denham, Robert T. Flaherty, Peter
D. Kaufman, Berkshire Hathaway,
Inc. and Montana Acquisitions, LLC,
Defendants.

CA. No. 6176–VCL.

Court of Chancery of Delaware.

Submitted: Oct. 4, 2011.
Decided: Oct. 13, 2011.

James C. Strum, Faruqi & Faruqi, LLP, Wilmington, Delaware; Juan E. Monteverde, Emily C. Komlossy, Richard W. Gonnello, Nicholas W. Moyne, Faruqi & Faruqi, LLP, New York, New York; Attorneys for Plaintiff.

William M. Lafferty, Shannon E. German, Ryan J. Greecher, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware; George M. Garvey, Munger, Tolles & Olson LLP, Los Angeles, California; Attorneys for Defendants Charles T. Munger, Robert E. Denham, Berkshire Hathaway Inc., and Montana Acquisitions, LLC.

Edward P. Welch, Joseph O. Larkin, Sarah Runnells Martin, Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware; Eric S. Waxman, Lance A. Etcheverry, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California; Attorneys for Defendants Elizabeth Caspers Peters, Carolyn H. Carlburg, and Robert T. Flaherty.

Danielle Gibbs, Nicholas J. Rohrer, Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware; Attorneys for Defendants Wesco Financial Corporation and Peter D. Kaufman.

## *OPINION*

LASTER, Vice Chancellor.

The plaintiff contends that holders of common stock of Wesco Financial Corporation were entitled to appraisal rights under Section 262 of the General Corporation Law, 8 *Del. C.* § 262, in connection with a forward triangular merger among Wesco, its parent Berkshire Hathaway Inc., and Montana Acquisitions, LLC, a Berkshire acquisition subsidiary. Under the merger agreement, Wesco's minority stockholders could elect to receive merger consideration in the form of (i) cash, (ii) publicly traded shares of the acquirer, or (iii) a mix of cash and publicly traded shares. Stockholders who failed to make an election received cash, and stockholders electing stock consideration received cash in lieu of fractional shares. The parties have cross-moved for partial summary judgment on the availability of appraisal rights, and the material facts are undisputed. Because Wesco common stockholders were not required to accept consideration other than stock listed on a national securities exchange and cash in lieu of fractional shares, they were not entitled to appraisal rights. Accordingly, summary judgment on this issue is entered in favor of the defendants.

## I.  FACTUAL BACKGROUND

Wesco is a Delaware corporation that operates in the insurance, furniture rental, and steel service center businesses. Before the merger, Wesco's common stock traded on NYSE Amex. Berkshire indirectly owned 80.1% of Wesco's outstanding common stock.

On February 4, 2011, Wesco and Berkshire entered into a merger agreement pursuant to which Wesco would merge into Montana Acquisitions, LLC, an indirect wholly owned subsidiary of Berkshire. Pursuant to the merger agreement, Wesco's minority stockholders could elect to have their shares converted into the right to receive approximately $385 per share in cash, an equivalent value in publicly traded shares of Berkshire Class B common stock, or a combination of cash and publicly traded shares. Stockholders who did not make an election would receive cash. The number of shares that Berkshire would issue was not capped or otherwise subject to proration, and Berkshire had sufficient authorized shares to issue the merger consideration even if all Wesco stockholders elected stock.

The proxy statement for the merger explained that holders of Wesco's common stock would not be entitled to appraisal rights.

> Under Delaware law, appraisal rights are only available if, among other things, shareholders are required to accept cash for their shares (other than cash in lieu of fractional shares). Given that the Wesco shareholders may elect to receive cash or Berkshire Class B common stock, or a combination of cash and Berkshire Class B common stock, in exchange for their shares of Wesco common stock, Wesco and Berkshire do not believe that Wesco shareholders will have any appraisal rights with [ ] respect to the shares of Wesco common stock they hold in connection with the merger.

Wesco Definitive Proxy Statement dated May 18, 2011 at 55.

Under the merger agreement, stockholders could submit an election form specifying the type of consideration that they wished to receive. The election form and the proxy for voting on the merger were separate documents. The election form was due two business days before the special meeting held to consider the merger. The proxy was due prior to the vote on the merger, or stockholders could appear at the special meeting and vote in person. Holders of 539,613 Wesco shares elected to receive cash, holders of 624,921 Wesco shares elected to receive Berkshire stock, and holders of 232,356 Wesco shares did not make an election. At the special meeting, Wesco's stockholders approved the merger. No Wesco stockholder demanded appraisal.

Joel Krieger, the plaintiff, owned 10 shares of Wesco common stock. He filed this action on February 8, 2011, the day after the merger announcement, then moved for a preliminary injunction. Krieger argued, among other things, that the merger should be enjoined because stockholders were entitled to appraisal rights and because the disclosures regarding appraisal rights in the proxy statement were false and misleading. I denied the injunction application on May 10, 2011. The parties subsequently cross-moved for partial summary judgment as to the availability of appraisal rights.

## II.  LEGAL ANALYSIS

■ Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Ct. Ch. R. 56(c).

"Where the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions." Ct. Ch. R. 56(h). The facts material to whether Wesco stockholders have appraisal rights are not in dispute, making the issue "ripe for summary judgment." *Gilbert v. El Paso Co.*, 575 A.2d 1131, 1142 (Del.1990).

Section 262(b) sets forth the general principle that "[a]ppraisal rights shall be available for the shares of any class or series of stock of a constituent corporation in a merger or consolidation" effected pursuant to certain enumerated sections of General Corporation Law. 8 *Del. C.* § 262(b). The enumerated sections include Section 264 of the General Corporation Law, 8 *Del. C.* § 264, pursuant to which the Wesco–Berkshire merger was effected. As a starting point, therefore, Wesco stockholders would be entitled to appraisal rights under Section 262(b).

The next step in the appraisal rights analysis focuses on Section 262(b)(1). Notwithstanding the general availability of appraisal rights for mergers effected pursuant to the sections enumerated in Section 262(b), Section 262(b)(1) creates the "market-out" exception. Under this exception,

no appraisal rights under this section shall be available for the shares of any class or series of stock, which stock ... at the record date fixed to determine the stockholders entitled to receive notice of the meeting of stockholders to act upon the agreement of merger or consolidation, [was] either (i) listed on a national securities exchange or (ii) held of record by more than 2,000 holders ....

8 *Del. C.* § 262(b)(1). Wesco's common stock was listed on a national securities exchange before the merger, so at this point in the analysis, Wesco's stockholders would not be entitled to appraisal rights.

■ But the appraisal statute continues. In what is known affectionately as the "exception to the exception," Section 262(b)(2) restores appraisal rights to a class or series of stock otherwise covered by the market-out exception if the holders are required to accept certain types of consideration.

(2) Notwithstanding paragraph (1) of this subsection, appraisal rights under this section shall be available for the shares of any class or series of stock of a constituent corporation if the holders thereof are required by the terms of an agreement of merger or consolidation ... to accept for such stock anything except:

a. Shares of stock of the corporation surviving or resulting from such merger or consolidation ...;

b. Shares of stock of any other corporation ... which shares of stock ... at the effective date of the merger or consolidation will be either listed on a national securities exchange or held of record by more than 2,000 holders;

c. Cash in lieu of fractional shares ...; or

d. Any combination of the shares of stock ... and cash in lieu of fractional shares ... described in the foregoing subparagraphs a., b. and c. of this paragraph.

8 *Del. C.* § 262(b)(2); *see* 2 Edward P. Welch et al., *Folk on the Delaware General Corporation Law* § 262.2.3, at GCL–IX–228 (5th ed. 2006) ("Section 262(b)(2) ... provid[es] an exception to the exception, thereby restoring appraisal rights in certain circumstances."). As noted, Wesco stockholders could elect to receive (i) cash,

(ii) shares of Berkshire Class B common stock listed on a national securities exchange, or (iii) a mix of cash and shares. Wesco stockholders who opted for Berkshire Class B shares would receive cash in lieu of fractional shares.

■ Under the terms of the merger agreement, holders of the class of Wesco common stock were not "required" to accept any type of consideration that would restore appraisal rights under the "exception to the exception." Berkshire had sufficient authorized shares of Berkshire Class B common stock *and* agreed to make sufficient shares available such that all holders of Wesco common stock could receive shares of Berkshire Class B common stock listed on a national securities exchange. The merger agreement did not contemplate proration or impose any cap on the number of shares available for individual stockholders or the class as a whole. No other eventuality has been identified that could have resulted in holders of Wesco common stock being "required" to accept appraisal-triggering consideration. *Cf. La. Mun. Police Employees' Ret. Sys. v. Crawford*, 918 A.2d 1172, 1191–92 (Del. Ch.2007) (holding stockholders were entitled to appraisal when required to accept merger consideration comprised of stock and cash distributed via dividend). The "exception to the exception" therefore did not apply, and appraisal rights were not available for shares of Wesco common stock in the Wesco–Berkshire merger.

■ Eschewing the language of Section 262(b)(1) and (b)(2), which makes the availability of appraisal rights dependent upon the type of consideration provided for a "class or series of stock," the plaintiff focuses on those individual Wesco stockholders who failed to make an election and therefore opted by default to receive cash. According to the plaintiff, this "select group of Wesco shareholders" is being "re-

quired" to accept cash and should receive appraisal rights. Pl.'s Reply Br. 3. But the transactional triggering of appraisal rights does not turn on the elections of individual stockholders. It rather depends on the statute pursuant to which the merger is effected (Sections 262(b) & 253(d)), the attributes of the class or series of stock of the constituent corporation (Section 262(b)(1) & (b)(3)), and the type of consideration that the merger requires the holders of the class or series of stock to receive (Section 262(b)(2)). The plaintiff's approach assumes that appraisal is available on a stockholder-by-stockholder basis. The General Corporation Law in fact makes appraisal rights available on a transactional and class-wide (or series-wide) basis. Stockholders can choose individually whether to perfect and pursue their appraisal rights, but the underlying statutory availability of appraisal rights is not a function of individual choice.

To indulge the plaintiff's stockholder-by-stockholder approach would not lead to the conclusion that any Wesco stockholder was "required" to accept cash. Wesco stockholders had a choice: they could make an election and select a form of consideration, or they could choose not to make an election and accept the default cash consideration. "[W]hat is impossible is not to choose. I can always choose, but I must also realize that, if I decide not to choose, that still constitutes a choice." Jean–Paul Sartre, *Existentialism Is a Humanism* 44 (Carol Macomber trans., Yale University Press 2007); *cf. Hubbard v. Hollywood Park Realty Enters., Inc.*, 1991 WL 3151, at *10 (Del.Ch. Jan. 14, 1991) ("From a semantic and even legal viewpoint, 'inaction' and 'action' may be substantive equivalents, different only in form.").

Because Wesco stockholders obviously were not required to accept cash, the plaintiff elsewhere asserts that Berkshire

and Wesco did not really give Wesco's stockholders a choice about what form of consideration to pick. First, the plaintiff asserts that "Wesco shareholders who vote against the Merger have no choice but to elect, or by default receive, 100% cash consideration because the Election Deadline precedes the Special Meeting." Pl's Opening Br. 2. Although it is true that the election deadline preceded the special meeting, nothing follows consequentially from that fact. The merger agreement did not condition the right to elect a particular form of consideration on voting for or against the merger.[1] Wesco stockholders readily could have elected any of the three forms of consideration and still voted against the merger. Stockholders who opposed the merger, but who favored Berkshire shares if the merger were approved, simply could have elected to receive Berkshire shares and then either voted against the merger or declined to vote at all. *See* 8 *Del. C.* § 264(c) (requiring that merger pursuant to Section 264 be "adopted, approved, certified, executed and acknowledged by each of the corporations in the same manner as is provided in § 251") & § 251(c) (requiring approval by "a majority of the outstanding stock of the corporation entitled to vote thereon").

■ In a related argument, the plaintiff contends that Wesco's stockholders were coerced into not making an election and therefore receiving cash because Wesco reserved the right to rely on the election as a defense in an appraisal proceeding. *See* Wesco Definitive Proxy Statement dated May 18, 2011 at 55 ("Wesco reserves the right to take the position that appraisal . . . may not be exercised with respect to

any shares as to which cash was elected or stock was received."). I am hard pressed to understand why the company made this disclosure. Section 262(a) does not contemplate that electing a form of consideration would affect a stockholder's appraisal rights. Under Section 262(a), an individual stockholder may pursue appraisal if the stockholder (i) makes a demand for appraisal pursuant to Section 262(d), (ii) holds shares continuously from the date of such demand through the effective date of the merger, and (iii) has "neither voted in favor of the merger . . . nor consented thereto in writing pursuant to § 228" of the General Corporation Law. 8 *Del. C.* § 262(a). Electing a form of merger consideration in accordance with the merger agreement and the instructions in the proxy statement would not have any effect on a stockholder's ability to perfect and pursue an appraisal.

If appraisal rights were available, then a misleading disclosure of this type might warrant a quasi-appraisal remedy. *See Berger v. Pubco Corp.*, 976 A.2d 132 (Del. 2009) (granting class-wide quasi-appraisal remedy to minority stockholders for disclosure violations in connection with short-form merger). In this case, however, the disclosure was immaterial. For the reasons already discussed, holders of the class of Wesco common stock were not entitled to appraisal rights. The erroneous disclosure about the effect of the election therefore could not mislead or harm stockholders.

■ Finally, the plaintiff contends that the proxy statement equivocated over the availability of appraisal rights. The

---

1. *See, e.g.,* Wesco Definitive Proxy Statement dated May 18, 2011 at 10 ("[E]ach Wesco shareholder who elects to receive Berkshire Class B common stock for any of their shares in the merger will receive their consideration in Berkshire Class B common stock for such shares. . . ."); *id.* at 75 ("[S]hareholders can elect to receive cash or shares of Berkshire Class B common stock for each Wesco share they own by properly completing an election form, which will be sent to Wesco shareholders in a separate mailing. . . .").

proxy statement accurately disclosed Wesco's correct belief that appraisal rights were not available. When disclosure is required about an unsettled question of law, a disclosure document can express the filer's view. *See Gen. DataComm Indus., Inc. v. State of Wis. Inv. Bd.*, 731 A.2d 818, 820 (Del.Ch.1999). The defendants had strong statutory bases for concluding that appraisal rights were not available, but recognized the absence of specific decisional law on point. The defendants therefore expressed their own belief and, after the plaintiff filed suit, noted the plaintiff's contrary view. The disclosures in the proxy statement on this issue were accurate and complete.

### III. CONCLUSION

The holders of Wesco common stock were not entitled to appraisal rights because they were not "required by the terms of an agreement of merger or consolidation" to accept consideration other than stock listed on a national securities exchange and cash in lieu of fractional shares. Plaintiff's motion for partial summary judgment is denied, and defendants' cross-motion for partial summary judgment is granted. **IT IS SO ORDERED.**