# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| CITY OF NORTH MIAMI BEACH GENERAL EMPLOYEES' RETIREMENT PLAN and MAITLAND POLICE OFFICERS AND FIREFIGHTERS RETIREMENT TRUST, on behalf of themselves and all other similarly situated stockholders of Dr Pepper Snapple Group, Inc., | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2018-0227-AGB |
| DR PEPPER SNAPPLE GROUP, INC., MAPLE PARENT HOLDINGS CORP., SALT MERGER SUB, INC., LARRY YOUNG, DAVID E. ALEXANDER, ANTONIO CARRILLO, JOSÉ M. GUTIÉRREZ, PAMELA H. PATSLEY, RONALD G. ROGERS, WAYNE R. SANDERS, DUNIA A. SHIVE, and M. ANNE SZOSTAK, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION

Date Submitted: May 25, 2018
Date Decided: June 1, 2018

Michael J. Barry, Jeff A. Almeida, and Laina M. Herbert of GRANT & EISENHOFER P.A., Wilmington, Delaware; Mark Lebovitch and John Vielandi of BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP, New York, New York; *Counsel for Plaintiffs*.

S. Mark Hurd, Melissa A. DiVincenzo, Eric S. Klinger-Wilensky, and Alexandra Cumings of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Brian A. Herman of MORGAN, LEWIS & BOCKIUS LLP, New York, New York; Jason H. Wilson of MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania; *Counsel for Defendants Dr Pepper Snapple Group, Inc., Salt Merger Sub, Inc., Larry Young, David E. Alexander, Antonio Carrillo, José M. Gutiérrez, Pamela H. Patsley, Ronald G. Rogers, Wayne R. Sanders, Dunia A. Shive, and M. Anne Szostak.*

Paul J. Lockwood, Joseph O. Larkin, Sarah R. Martin, Alyssa S. O'Connell, and Michelle L. Davis of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware; *Counsel for Defendant Maple Parent Holdings Corp.*

**BOUCHARD, C.**

Earlier this year, Dr Pepper Snapple Group, Inc. and Keurig Green Mountain, Inc. announced an agreement to combine their businesses to create a more diversified beverage company. The transaction is structured so that Keurig will become an indirect wholly-owned subsidiary of Dr Pepper through a reverse triangular merger. Dr Pepper stockholders will receive $103.75 per share in a special cash dividend and will retain their shares of Dr Pepper, which will account for 13% of the shares of the combined company. The indirect owners of Keurig will receive shares of Dr Pepper and will hold the remaining 87% of the equity of the combined company.

Dr Pepper stockholders are not being asked to approve the merger, which combines a merger subsidiary of Dr Pepper with the parent of Keurig. But they are being asked to approve two proposals necessary to effectuate the transaction at a stockholders meeting scheduled for June 29, 2018.

On March 8, 2018, Dr Pepper issued a preliminary proxy statement for the stockholders meeting. It states that Dr Pepper stockholders will not have appraisal rights under Section 262 of the Delaware General Corporation Law in connection with the proposed transaction. That filing prompted two stockholder plaintiffs to file this action in which they assert that Dr Pepper stockholders "ought" to be afforded appraisal rights in connection with the proposed transaction.

The parties agree that "this action concerns a purely legal question"[1] concerning the availability of appraisal rights under Section 262. They have filed cross-motions for summary judgment, requesting a decision before the upcoming stockholders meeting.

Section 262 affords stockholders of Delaware corporations a statutory remedy for appraisal of their shares in certain defined circumstances. Relevant here, Section 262(b) expressly provides that appraisal rights shall be available only for the shares of stock of a "constituent corporation" in a merger or consolidation to be effected pursuant to certain provisions of the General Corporation Law. The three-step process for determining a stockholder's entitlement to appraisal under Section 262(b) also contemplates that the stockholder will relinquish its shares in the merger or consolidation.

For the reasons explained below, the court holds that the term "constituent corporation" as used in Section 262 means an entity *actually being merged or combined* and not the parent of such an entity. Based on that construction, the court concludes that Dr Pepper's stockholders do not have a statutory right to appraisal under Section 262(b) because Dr Pepper is not a constituent corporation. Instead,

---

[1] Pls.' Mot. to Expedite 10 (Dkt. 1); Dr Pepper Defs.' Opening Br. 5 (Dkt. 25).

2

Dr Pepper is simply the parent of one of the two corporations that will be merged in connection with the proposed transaction.

As a second ground for its decision, the court concludes that Dr Pepper stockholders are not entitled to appraisal because they are retaining their shares in connection with the proposed transaction. This type of transaction does not fit the statutory scheme of Section 262(b), which contemplates that the shares for which appraisal is sought will be relinquished in a merger or consolidation.

Based on these conclusions, defendants' motions for summary judgment will be granted, and plaintiffs' motion for summary judgment will be denied.

## I.      BACKGROUND

The facts recited herein are based on the uncontroverted allegations of the Verified Class Action Complaint (the "Complaint")[2] and certain documents filed with the Securities and Exchange Commission that were cited in the parties' submissions in connection with their cross-motions for summary judgment.[3]

### A.      The Parties and Relevant Non-Parties

Defendant Dr Pepper Snapple Group, Inc. ("Dr Pepper") is a publicly traded corporation that produces and sells more than fifty brands of flavored beverages

---

[2] Dkt. 1.

[3] Transmittal Aff. of Alexandra Cumings ("Cumings Aff.") (Dkt. 25); Transmittal Aff. of Laina M. Herbert ("Herbert Aff.") (Dkt. 27).

throughout North America and the Caribbean.[4]  Defendant Salt Merger Sub, Inc. ("Merger Sub") is a wholly-owned subsidiary of Dr Pepper that was formed solely for the purpose of facilitating the transactions described herein.[5]  The nine individual defendants comprise Dr Pepper's board of directors:  Larry Young, David E. Alexander, Antonio Carrillo, José M. Gutiérrez, Pamela H. Patsley, Ronald G. Rogers, Wayne R. Sanders, Dunia A. Shive, and M. Anne Szostak.[6]

Defendant Maple Parent Holdings Corp. ("Maple Parent") is a private entity that indirectly owns non-party Keurig Green Mountain, Inc., a leader in specialty coffee and single-serve brewing systems.[7]  Non-party JAB Holdings Company S.à r.l. ("JAB") controls Maple Parent.[8]

Plaintiffs City of North Miami Beach General Employees' Retirement Plan and Maitland Police Officers and Firefighters Retirement Trust purportedly hold an undisclosed number of shares of Dr Pepper common stock.[9]

---

[4] Herbert Aff. Ex. A at 4.

[5] Herbert Aff. Ex. D at 1; Compl. ¶ 16.

[6] Compl. ¶¶ 17-25.

[7] Herbert Aff. Exs. A at 4, B at 2; Compl. ¶ 15.

[8] Herbert Aff. Ex. C at iii.

[9] Compl. ¶¶ 12-13.

4

## B.    The Proposed Transactions

On January 29, 2018, Dr Pepper, Maple Parent, and Merger Sub entered an Agreement and Plan of Merger (the "Merger Agreement").[10]  Under the Merger Agreement, Merger Sub will merge "with and into Maple Parent," with Maple Parent surviving the transaction as a wholly-owned subsidiary of Dr Pepper (the "Merger").[11]  Each share of Merger Sub common stock will be converted into one share of the surviving corporation (*i.e.*, Maple Parent), and each share of Maple Parent common stock will be converted into the right to receive shares of newly-issued Dr Pepper common stock determined pursuant to an exchange ratio set forth in the Merger Agreement.[12]  Before the closing of the Merger, Maple Parent will declare a $9 billion cash dividend to Dr Pepper.[13]

If completed, the equity holders of Maple Parent immediately before the effective time of the Merger (the "Effective Time") will own approximately 87% of Dr Pepper's common stock immediately after the Effective Time.[14]  The public stockholders of Dr Pepper immediately before the Effective Time will retain their

---

[10] Cumings Aff. Ex. A.

[11] *Id*. § 1.01.

[12] *Id.* §§ 3.01(a), (b).

[13] *Id.* § 7.13(b).

[14] *Id*. at First Recital.

shares and own approximately 13% of Dr Pepper after the Merger.[15]   After the

Merger, JAB will be Dr Pepper's controlling stockholder.[16]

The Merger is depicted in the diagram below:[17]



**The Merger**

---

[15] *Id.*

[16] Herbert Aff. Ex. C at 53-54.

[17] For the sake of simplicity, Keurig Green Mountain, Inc. is depicted in the diagrams set forth below as a direct subsidiary of Maple Parent.  Whether Keurig Green Mountain, Inc. is a direct or indirect subsidiary of Maple Parent does not affect the analysis in this opinion.

Dr Pepper plans to declare a special cash dividend to its stockholders of record as of the business day immediately preceding the closing of the Merger, entitling them to $103.75 per share, payable one business day after the Effective Time (the "Special Dividend").[18] Dr Pepper expects to fund the Special Dividend with funds secured from third-party financing sources and the $9 billion dividend it will receive from Maple Parent.[19] The post-Merger entity and Special Dividend are depicted in the diagram below:



**Post-Merger Entity & Special Dividend**

---

[18] Cumings Aff. Ex. A at Fourth Recital, § 7.13(c).

[19] Dr Pepper Defs.' Opening Br. 7; *see also* Cumings Aff. Ex. A §§ 4.16(a), 7.13(b).

## C. The Charter Amendment and Share Issuance Proposals

Dr Pepper's stockholders are not being asked to vote to approve the Merger. Rather, as described in a preliminary proxy statement filed with the SEC on March 8, 2018 (the "Preliminary Proxy"), Dr Pepper's stockholders will vote on two proposals necessary to effectuate the transactions contemplated by the Merger Agreement at a stockholders meeting to be held on June 29, 2018.[20] First, Dr Pepper's stockholders will "vote on a proposal to approve the issuance of [Dr Pepper] common stock as merger consideration pursuant to the [Merger Agreement]" (the "Share Issuance Proposal").[21] Second, Dr Pepper's stockholders will "vote on a proposal to approve an amendment to the certificate of incorporation of [Dr Pepper] to provide for [] an increase in authorized shares to permit issuance of a sufficient number of shares as merger consideration" (the "Charter Amendment Proposal").[22] The Merger only can be consummated, and stockholders only will receive the Special Dividend if Dr Pepper's stockholders approve both the Share Issuance and Charter Amendment Proposals.[23]

The Preliminary Proxy informs Dr Pepper's stockholders that they do not have appraisal rights in connection with the Merger. Specifically, it states that "Section

---

[20] Tr. 42 (May 25, 2018); Cumings Aff. Ex. B at Cover Letter to Stockholders.

[21] Cumings Aff. Ex. B at Notice of Annual Meeting of Stockholders.

[22] *Id*.

[23] *Id.* at Cover Letter to Stockholders.

8

262 of the DGCL does not provide for appraisal rights in connection with the transactions contemplated by the merger agreement for holders of shares of [Dr Pepper] common stock."[24]

## II. PROCEDURAL HISTORY

Plaintiffs filed the Complaint on March 28, 2018, asserting two claims. Count I asserts that the individual defendants breached their fiduciary duties by failing to inform Dr Pepper's stockholders that they have appraisal rights in connection with the Merger.[25] Count II asserts that 8 *Del. C.* § 262(d)(1) was violated because the Preliminary Proxy did not inform stockholders of the availability of appraisal rights.[26] Plaintiffs ask the court to "[e]njoin the Proposed Transaction until Plaintiffs and the Class are provided their rights under 8 *Del. C.* § 262, or alternatively permit class members to demand and petition this Court for appraisal."[27]

On April 30, 2018, Maple Parent and Dr Pepper each filed a motion for summary judgment under Court of Chancery Rule 56.[28] On May 1, 2018, plaintiffs

---

[24] *Id*. at 18, 185.

[25] Compl. ¶¶ 45-54.

[26] Compl. ¶¶ 55-56.

[27] Compl. at 18.

[28] Dkts. 25 & 26.

9

filed a cross-motion for summary judgment.[29]  Briefing was completed on May 18, 2018, and the court heard argument on the motions on May 25, 2018.

## III. ANALYSIS

This action boils down to the purely legal question of whether Dr Pepper's stockholders have appraisal rights in connection with the Merger under 8 *Del. C.* § 262.  For the reasons explained below, I find that they do not.  Thus, the motions for summary judgment of Dr Pepper and Maple Parent will be granted, and plaintiffs' motion will be denied.

### A. Summary Judgment Standard

Under Court of Chancery Rule 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[30] The parties have filed cross-motions and agree that there is no genuine issue as to any material fact that would preclude the court from granting summary judgment.[31] Thus, under Court of Chancery Rule 56(h), "the Court shall deem the motions to be

---

[29] Dkt. 27.

[30] Ct. Ch. R. 56(c).

[31] Pls.' Opening Br. 11 (Dkt. 27); Dr Pepper Defs.' Opening Br. 5.

10

the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[32]

## B. Dr Pepper's Stockholders are not Entitled to Appraisal Rights Under 8 *Del. C.* § 262

"Under Delaware law, the appraisal remedy is entirely a creature of statute."[33] "The goal of statutory construction is to determine and give effect to legislative intent."[34] Thus, "[t]he plain meaning of the statutory language controls if the statute is found to be clear and unambiguous" and, "[i]f a statutory provision is ambiguous," the court should "consider the statute as a whole, rather than in parts, to produce a harmonious interpretation of a given provision."[35] In either event, "it is a well established principle of statutory interpretation that the law favors rational and sensible construction."[36]

As explained below, Dr Pepper's stockholders are not entitled to appraisal of their shares in connection with the Merger because the statutory requirements plainly

---

[32] Ct. Ch. R. 56(h).

[33] *Alabama By-Prods. Corp. v. Cede & Co. ex rel. Shearson Lehman Bros.*, 657 A.2d 254, 258 (Del. 1995) (citation and internal quotations omitted).

[34] *One-Pie Invs., LLC v. Jackson*, 43 A.3d 911, 914 (Del. 2012) (citation and internal quotations omitted).

[35] *Pellicone v. New Castle Cty.*, 88 A.3d 670, 673 (Del. 2014) (citations omitted); *see also Arbern-Wilmington, Inc. v. Director of Revenue*, 596 A.2d 1385, 1390 (Del. 1991) (citation omitted) ("It is a well-settled principle of construction that the legislature enacts statutes as a whole and that each part must be read in conjunction with the other parts.").

[36] *One-Pie Invs.*, 43 A.3d at 914 (citation and internal quotations omitted).

enumerated in Section 262 have not been met for two reasons that are corroborative of each other: (i) Dr Pepper is not a "constituent corporation" in the Merger as required under Section 262(b) in order to trigger a right to appraisal, and (ii) stockholders of Dr Pepper are retaining their shares in connection with the Merger.

**1.    Dr Pepper's Stockholders are not Entitled to Appraisal Rights because Dr Pepper is not a Constituent Corporation in the Merger**

Section 262(b) imposes a threshold requirement for determining when appraisal rights are available in connection with a merger or consolidation effected under the Delaware General Corporation Law:

> Appraisal rights shall be available for *the shares of any class or series of stock of a constituent corporation in a merger or consolidation* to be effected pursuant to § 251 . . ., § 252, § 254, § 255, § 256, § 257, § 258, § 263 or § 264 of this title . . .[37]

---

[37] 8 *Del. C.* § 262(b) (emphasis added). In addition to the statutory right to appraisal afforded under Section 262(b), the statute provides that a corporation may provide in its certificate of incorporation for appraisal rights under Section 262 in certain circumstances, specifically "for the shares of any class or series of its stock as a result of an amendment to its certificate of incorporation, *any merger or consolidation in which the corporation is a constituent corporation* or the sale of all or substantially all of the assets of the corporation." 8 *Del. C.* § 262(c) (emphasis added). No contention is made in this case that Dr Pepper's certificate of incorporation provides for appraisal under Section 262(c). Notably, even when a certificate of incorporation expands under Section 262(c) the availability of appraisal rights for a merger or consolidation beyond what is available under Section 262(b), the statute still limits the remedy to shares of "a constituent corporation" to the merger or consolidation.

12

Thus, as a statutory matter, appraisal is available in a merger or consolidation governed by Section 262(b) only for the stock of a "constituent corporation."[38]

The Delaware General Corporation Law does not explicitly define the term "constituent corporation," but a number of its provisions give insight into the meaning of the term. Together, they clearly imply that "constituent corporations" are entities that actually were merged or combined in the transaction and *not* a parent of such entities.

For example, Section 251(a) provides: "Any 2 or more corporations of this State may merge into a single surviving corporation, which may be any 1 of the constituent corporations or may consolidate into a new resulting corporation formed by the consolidation."[39] Because this statute provides that the entity surviving a merger may be either (i) a "new resulting" entity of a consolidation *or* (ii) one of two or more "constituent corporations" to a merger, the term "constituent corporations" must mean the corporations actually being merged or consolidated.

---

[38] 2 DAVID A. DREXLER ET AL., DELAWARE CORPORATION LAW AND PRACTICE § 36.02, at 36-2 (2017) ("Section 262 begins with the premise that appraisal rights exist for the shares of each class or series of stock of each constituent corporation."); 1 DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 8.10[a], at 8-207 (2014) ("Section 262 of the Delaware General Corporation Law provides a procedure for a judicial determination of the fair value of shares of stock of Delaware corporations that are constituent parties to certain types of mergers or consolidations.").

[39] 8 *Del. C.* § 251(a).

Similarly, Section 262(b)(1)(ii) states that "no appraisal rights shall be available for any shares of stock of the constituent corporation surviving a merger if the merger did not require for its approval the vote of the stockholders of the surviving corporation as provided in § 251(f) in this title."[40]  Logically, for a constituent corporation to "survive" a merger, the constituent corporation must be an entity preexisting the merger that was combined with another entity in the transaction.

In the same vein, this court has interpreted the term "constituent corporations" to mean only those legal entities actually being combined in a transaction. Specifically, in *In re Inergy L.P. Unitholder Litig.*,[41] the court considered whether the unitholders of a limited partnership (Inergy) were entitled to vote on a proposed merger under Inergy's partnership agreement.  The court explained that the answer "turns on whether Inergy is actively 'merging' or 'consolidating' with another entity so that it is a constituent party to such merger or consolidation."[42]  Although Inergy was a contractual party to the merger agreement, the court concluded that it was "clear" that Inergy was "not a constituent of the merger between Holdings and

---

[40] *8 Del. C.* § 262(b)(1)(ii).

[41] 2010 WL 4273197 (Del. Ch. Oct. 29, 2010).

[42] *Id.* at *10.

14

MergerCo."[43] Accordingly, the court found that Inergy's unitholders were unlikely to succeed on their claim that they were entitled to vote on the merger.

In analyzing the issue, the *Inergy* court analogized to the use of triangular mergers in the corporate context, *i.e.*, where "a parent corporation can acquire a target corporation by setting up a subsidiary to merge with the target."[44] The court explained that the "effect of this arrangement is that the parent does not become a constituent to the merger between the target and the subsidiary" and thus the stockholders of the parent "generally are not entitled to vote on the merger."[45] This conclusion is consistent with this court's observation in *Lewis v. Ward* that the stockholders of a parent corporation of a merging subsidiary in a triangular merger "generally do not have the right to vote on the merger, nor are they entitled to appraisal."[46]

The authorities discussed above support interpreting the term "constituent corporation" in Section 262 to mean only an entity that actually is being merged or

---

[43] *Id.*; *see also id.* ("Thus, the constituent parties to the merger are Holdings and MergerCo, and not Inergy.").

[44] *Id.* at *11.

[45] *Id.*

[46] 2003 WL 22461894, at *4 n.18 (Del. Ch. Oct. 29, 2003) (Strine, V.C.). *aff'd*, 852 A.2d 896 (Del. 2004). *See also* 1 R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, THE DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 9.7. (explaining that "[t]he stockholders of [the acquiring corporation in a triangular merger] do not have the right to vote on the merger, nor are they entitled to appraisal rights since [the acquiring corporation] is not a constituent corporation").

15

combined with another entity in a merger or consolidation and thus does not include a parent of such entities. This interpretation is consistent with how this court and leading Delaware corporate law treatises have understood the term, albeit without specifically analyzing the issue.[47]

Tellingly, plaintiffs did not advance an alternative interpretation of the term "constituent corporation" in their briefs.[48] Instead, relying heavily on dictum in *Hollinger Inc. v. Hollinger International, Inc.*,[49] plaintiffs argue that Dr Pepper

---

[47] *See, e.g., Cede & Co., Inc. v. MedPointe Healthcare, Inc.*, 2004 WL 2093967, at *8 (Del. Ch. Sept. 10, 2004) (noting that "in applying the appraisal statute, [the court] is constrained by it to value the Carter-Wallace entity that was merged" and characterizing Carter-Wallace as "the 'constituent corporation' in the Merger"); *Kaye v. Pantone, Inc.*, 395 A.2d 369, 375 (Del. Ch. 1978) ("The right to an appraisal is limited to stockholders of the merged corporations."); 1 R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, THE DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 9.43[A], at 9-128 n.635 (3d ed. Supp. 2015) ("The 'constituent corporations' [referenced in provisions of the General Corporation Law] are those corporations that are the actual corporations merging or consolidating."); 2 EDWARD P. WELCH ET AL., FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 262.02[A], at 9-178 (6th ed. Supp. 2018) ("[I]t is plain from [Section 262] and other sections of the General Corporation Law that all of the corporations merging or consolidating are constituent corporations, whether surviving or disappearing.").

[48] When pressed on this point at oral argument, plaintiffs proffered two definitions. Plaintiffs initially suggested that the term "constituent corporation" should mean "the company whose business is being merged" and then advocated that the term should "include the real party in interest to the merger." Tr. 23, 75 (May 25, 2018). Plaintiffs provided no textual basis in the General Corporation Law to support either interpretation, both of which undoubtedly would engender litigation and inject uncertainty into the availability of appraisal rights under Section 262.

[49] 858 A.2d 342, 372-75 (Del. Ch. 2004) (Strine, V.C.), *interlocutory appeal refused*, 871 A.2d 1128 (Del. 2004) (TABLE).

16

simply "ought" to be considered a constituent corporation even though it is not being merged or combined with another entity in the proposed transaction.[50]

In *Hollinger*, Chief Justice Strine, writing as Vice Chancellor, addressed whether 8 *Del. C.* § 271, as then written,[51] required a vote of a parent corporation's stockholders to approve a sale of certain assets when those assets were held by an indirect, wholly-owned subsidiary.[52] The court ultimately held that the value of the challenged asset sale did not meet the threshold necessary to require a stockholder vote under Section 271.[53] In doing so, the court discussed but did not decide the merits of defendant's "technical defense" that when the subsidiary actually was the entity that held the assets, there was no requirement for the parent's stockholders to vote on the sale under Section 271.[54] Plaintiffs rely in particular on the following passage from this discussion in which the court posited that it may be appropriate in certain circumstances to disregard corporate formalities for Section 271's vote requirement:

---

[50] Pls.' Answering Br. 4 (Dkt. 36).

[51] In 2005, the year after *Hollinger* was decided, Section 271 was amended to specifically provide that the property and assets of a wholly-owned and controlled, directly or indirectly, subsidiary will be considered the property and assets of its parent corporation for purposes of Section 271. *See* 8 *Del. C.* § 271(c).

[52] *Hollinger*, 858 A.2d at 346.

[53] *Id.* at 348-49.

[54] *Id.* at 371-75.

17

When an asset sale by the wholly owned subsidiary is to be consummated by a contract in which the parent entirely guarantees the performance of the selling subsidiary that is disposing of all of its assets and in which the parent is liable for any breach of warranty by the subsidiary, the direct act of the parent's board can, without any appreciable stretch, be viewed as selling assets of the parent itself. By its direct contractual action, the parent board is promising to dispose of all of the underlying assets of the subsidiaries by having the parent cause its wholly owned subsidiaries to sell, by promising to bear all the economic risks of the asset sale itself, and by therefore essentially eliminating the subsidiary's purpose and existence and monetizing for itself as parent the value of the assets held by that subsidiary. ***To find that § 271's vote requirement were implicated by such a contract if it involved the sale of assets that would, if owned directly by the parent, comprise substantially all of the parent's assets would not, despite [defendant's] well-stated arguments to the contrary, be an irrational implementation of the legislative intent expressed in that section of our corporation code.***[55]

Apart from the fact that the foregoing discussion is dictum, it would be inadvisable in my opinion to attempt to extend this reasoning to this case because disregarding the distinction between corporate entities would have more significant negative repercussions in the context of applying Section 262 than it would have had in applying the prior version of Section 271. In *Hollinger*, the court focused on a singular question: whether a subsidiary's assets could constitute "all or substantially all" of a parent corporation's assets to trigger a stockholder's *right* to vote on an asset sale under Section 271. The answer to that question was the end of the court's statutory analysis. Section 262, by contrast, is a more complicated statutory scheme

---

[55] Pls.' Answering Br. 7 (emphasis in original; quoting *Hollinger*, 858 A.2d at 375).

18

that not only determines *when* stockholders have appraisal *rights*,[56] but also enumerates certain *procedures* to perfect and litigate those rights[57] in order to receive a specified *remedy*.[58]

As defendants point out,[59] in a transaction with as many components as the one in this action (*i.e.*, the Share Issuance Proposal, the Charter Amendment Proposal, the Merger, and the Special Dividend), disregarding the corporate form would lead to many open questions under the appraisal statute without readily apparent answers, such as:

- How can Section 262's references to shares not "voted in favor of the merger" be harmonized with the fact that Dr Pepper's stockholders are not being asked to vote on the Merger?

- Would references to the "corporation," the "constituent corporation," and the "surviving corporation" in Section 262 refer to Dr Pepper or Maple Parent?

- Would Dr Pepper's stockholders seeking to perfect appraisal rights be permitted to retain their Dr Pepper shares?

- Would Dr Pepper's stockholders seeking to perfect appraisal rights be permitted to accept the Special Dividend?

---

[56] 8 *Del. C.* § 262(b).

[57] 8 *Del. C.* §§ 262(d)-(g).

[58] 8 *Del. C.* §§ 262(h)-(j); *see Golden Telecom, Inc. v. Glob. GT LP*, 11 A.3d 214, 217-18 (Del. 2010) (emphasis in original) ("Section 262(h) unambiguously calls upon the Court of Chancery to perform an *independent* evaluation of 'fair value' at the time of a transaction.").

[59] Dr Pepper Defs.' Opening Br. 28-29.

- If Dr Pepper's stockholders seeking to perfect appraisal rights are permitted to accept the Special Dividend payment, and if fair value of Dr Pepper is judicially determined to be less than the Special Dividend, will Dr Pepper's stockholders be required to return such payment?

Plaintiffs purport to have answers to these open questions, and they urge the court to adopt their interpretation of how the statute should apply to this transaction.[60] This invitation is problematic because it asks the court to gloss over the actual words in Section 262 to stitch together a new set of rules, cobbling together a bespoke statute for this particular fact pattern. Such an approach is undesirable as it would "create uncertainty in the law and invite litigation."[61]

As Chief Justice Strine recognized in *Hollinger*, "it remains a fundamental principle of Delaware law that the courts of this state should apply a statute in accordance with its plain meaning, as the words that our legislature has used to express its will are the best evidence of its intent."[62] Former Chancellor Allen similarly extolled the virtue of taking a literal approach to statutory construction when interpreting the Delaware General Corporation Law:

> As a general matter, those who must shape their conduct to conform to the dictates of statutory law should be able to satisfy such requirements by satisfying the literal demands of the law rather than being required to guess about the nature and extent of some broader or different restriction at the risk of an *ex post facto* determination of error. The utility of a literal approach to statutory construction is particularly

---

[60] Pls.' Answering Br. 18-21.

[61] *Hariton v. Arco Elecs., Inc.*, 188 A.2d 123, 125 (Del. 1963).

[62] *Hollinger*, 858 A.2d at 376.

20

apparent in the interpretation of the requirements of our corporation law—where both the statute itself and most transactions governed by it are carefully planned and result from a thoughtful and highly rational process.[63]

The authorities discussed above uniformly support, and I so hold, that the term "constituent corporation" in Section 262 plainly means only an entity that actually is being merged or combined with another entity in a merger or consolidation and thus does *not* include a parent of such entities. Applying this definition, it is clear that the "constituent corporations" in the Merger are Maple Parent and Merger Sub and that Dr Pepper is not a constituent corporation in the Merger.

The transaction here is structured as a reverse triangular merger, where parent Dr Pepper causes its subsidiary Merger Sub to merge with and into Maple Parent, resulting in Maple Parent becoming a wholly-owned subsidiary of Dr Pepper. The fact that Merger Sub merely functions as an intermediary entity, solely formed to facilitate the Merger, does not confer Merger Sub's status as a constituent corporation on its parent Dr Pepper.[64] Accordingly, because Dr Pepper is not a

---

[63] *Speiser v. Baker*, 525 A.2d 1001, 1008 (Del. Ch. 1987) (Allen, C.)

[64] *See Inergy L.P.*, 2010 WL 4273197, at *11 ("That MergerCo is an intermediary vessel in this transaction where significant consideration passes between Holdings and Inergy does not make Inergy a constituent to the merger between Holdings and MergerCo.").

constituent corporation in the Merger, its stockholders are not entitled to appraisal rights under 8 *Del. C.* § 262.[65]

### 2.    Dr Pepper's Stockholders are not Entitled to Appraisal Rights Because They are Retaining Their Shares

A second reason why Dr Pepper's stockholders are not entitled to appraisal rights under Section 262(b) is because they are not being forced to give up their shares of Dr Pepper in connection with the proposed transaction.  As discussed below, the three-step process for determining a stockholder's entitlement to appraisal under Section 262(b) plainly contemplates that the stockholder relinquish its shares.

For the sake of argument, assume that Dr Pepper qualifies as a constituent corporation and the initial requirements of Section 262(b) described above have been met.  The second step in the appraisal-entitlement analysis appears in Section 262(b)(1), which creates the "market-out" exception:

> [N]o appraisal rights under this section shall be available for the shares of any class or series of stock, which stock . . . at the record dated fixed to determine the stockholders entitled to receive notice of the meeting of stockholders to act upon the agreement of merger or consolidation, were either:  (i) listed on a national securities exchange or (ii) held of record by more than 2,000 holders.[66]

---

[65] Plaintiffs' citation of *Krieger v. Wesco Fin. Corp.*, 30 A.3d 54 (Del. Ch. 2011) is inapposite.  In that case, the court first determined that Wesco was a constituent corporation and then proceeded to consider whether Wesco stockholders were required to accept consideration other than publicly traded stock in a triangular merger. *Id.* at 56-58.  Here, Dr Pepper does not meet the threshold of qualifying as a constituent corporation.

[66] 8 *Del. C.* § 262(b)(1).

At this point in the analysis, Dr Pepper's stockholders would not be entitled to appraisal rights because Dr Pepper's stock is listed on a national securities exchange.[67] The analysis does not stop there, however, but proceeds to a third step. "In what is known affectionately as the 'exception to the exception,' Section 262(b)(2) restores appraisal rights to a class or series of stock otherwise covered by the market-out exception if the holders are required to accept certain types of consideration."[68]

> [A]ppraisal rights under this section shall be available for the shares of any class or series of stock of a constituent corporation if the holders thereof are required by the terms of an agreement of merger or consolidation . . . *to accept for such stock anything except*:
>
> a. Shares of stock of the corporation surviving or resulting from such merger or consolidation . . .;
>
> b. Shares of stock of any other corporation . . . which shares of stock . . . at the effective date of the merger or consolidation will be either listed on a national securities exchange or held of record by more than 2,000 holders;
>
> c. Cash in lieu of fractional shares . . .; or
>
> d. Any combination of the shares of stock . . . and cash in lieu of fractional shares . . . described in the foregoing paragraphs . . . of this section.[69]

---

[67] Herbert Aff. Ex. A at 4.

[68] *Wesco*, 30 A.3d at 57.

[69] 8 *Del. C.* § 262(b)(2) (emphasis added).

The "exception to the exception" would not restore appraisal rights to Dr Pepper's stockholders here, because they are not required to accept *anything* for their Dr Pepper shares.[70] Indeed, post-Merger, Dr Pepper's stockholders will continue to hold their shares, albeit then constituting a minority equity stake in the combined entity. To be sure, the Merger is a sale of control of Dr Pepper to Maple Parent,[71] a point that defendants do not dispute.[72] Section 262, however, does not bestow appraisal rights on stockholders simply upon a sale of control. Rather, as the three-step process set forth in Section 262(b) for determining a stockholder's entitlement to appraisal demonstrates, stockholders are only entitled to appraisal of their shares *when those shares* are being taken from them in *certain, statutorily specified* types of transactions.

Apart from providing a second textual basis in the statute for finding that Dr Pepper's stockholders do not have appraisal rights here, the fact that Section 262(b) is structured to afford appraisal rights only to stockholders who relinquish their shares in a merger or consolidation confirms my interpretation of the term

---

[70] *See* Dr Pepper Defs' Answering Br. at 7 n.13 (noting that the appraisal remedy exists to enable stockholders "to obtain the 'fair value' of the shares that have been taken") (citing JAY W. EISENHOFER & MICHAEL J. BARRY, SHAREHOLDER ACTIVISM HANDBOOK § 11.01, at 11-3 (2014)).

[71] *See* Herbert Aff. Ex. E at 4 (Dr Pepper's President and CEO Larry Young stating "[t]hey bought us"); Am. Compl. ¶¶ 5, 15 (alleging that Maple Parent is Keurig's parent).

[72] Dr Pepper Defs.' Opening Br. 28.

"constituent corporation." This is because, in order to relinquish one's shares in a merger or consolidation, the stockholder must hold shares in an entity that actually is being merged or combined (*i.e.*, in a "constituent corporation") and not in the parent of such an entity.

Notwithstanding the clear terms of Section 262, plaintiffs implore the court to focus on "the structure and economic reality of this deal."[73] Specifically, plaintiffs ask the court to cut through the form of the Merger and Special Dividend and consider the "give" and "get" of the transaction: Dr Pepper's stockholders are giving up 100% control of Dr Pepper in exchange for $103.75 per share in cash and a 13% equity stub in the post-Merger entity.[74]

According to plaintiffs, appraisal "should"[75] be available here because it resembles the transaction in *Louisiana Municipal Police Employees' Retirement System v. Crawford.*[76] In *Crawford*, the challenged transaction involved CVS acquiring Caremark through a reverse triangular merger, with a CVS subsidiary being merged with and into Caremark.[77] After the merger, the former Caremark stockholders would own approximately 45.5% of the combined entity via newly held

---

[73] Pls.' Answering Br. 3.

[74] *Id.*

[75] *Id.*

[76] 918 A.2d 1172 (Del. Ch. 2007).

[77] *Id.* at 1177-79; Cumings Aff. Ex. C at 1.

CVS/Caremark stock,[78] and they would receive a special cash dividend of $6 per share payable by Caremark for the stock they previously held.[79] The court found that this special cash dividend was "fundamentally cash consideration paid to Caremark shareholders on behalf of CVS" that did not have independent legal significance from the merger.[80] The court thus held that Caremark stockholders had appraisal rights because they were being forced to accept cash consideration.[81]

Comparing the transaction in this action to the one in *Crawford*, plaintiffs here argue "[i]f appraisal is provided in either transaction, it should be in the one that almost entirely cashes out the target's stockholders and leaves them with nominal equity in a controlled entity. It would be ironic if the law required the opposite result."[82]

This argument is not persuasive. The form of the transaction in *Crawford* neatly meets Section 262's requirements—Caremark was a constituent corporation in the merger with a CVS subsidiary, and Caremark's stockholders were required to

---

[78] Cumings Aff. Ex. C at 2.

[79] *Crawford*, 918 A.2d at 1191.

[80] *Id.* at 1191 (emphasis in original) ("[The acquirer (CVS)] specifically condition[ed] payment of the $6 cash 'special dividend' on shareholder approval of the merger agreement. Additionally, the payment becomes due upon or even *after* the effective time of the merger. . . In this case, the label 'special dividend' is simply cash consideration dressed up in a none-too-convincing disguise.").

[81] *Id.* at 1191-92

[82] Pls.' Answering Br. 3.

exchange their Caremark shares for CVS/Caremark shares and cash consideration. Here, as described above, Dr Pepper is not a constituent corporation in the Merger, and Dr Pepper's stockholders are not being required to relinquish their shares. In essence, plaintiffs are asking the court to disregard the express terms of the appraisal statute to surmise the underlying economic and practical effect of the Merger and the Special Dividend. It would be inappropriate for me to judicially rewrite the statute to achieve this result, and I decline to do so.[83]

## IV.   CONCLUSION

The premise of Counts I and II of the Complaint is that Dr Pepper's stockholders are entitled to appraisal rights under Section 262(b) in connection with the proposed transaction. Because that premise is incorrect for the reasons stated above, the motions for summary judgment of Dr Pepper and Maple Parent are GRANTED, and plaintiffs' cross-motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

---

[83] Plaintiffs contend that "to deny stockholders appraisal rights here would encourage other companies to imitate [Dr Pepper's] contortionist moves, and minority stockholders would be stripped of the protections that Section 262 offers." Pls.' Answering Br. 17. This contention is overstated. The form of this transaction is no secret. It was employed nearly ten years ago in a merger involving Allscripts Healthcare Solutions, Inc. and Misys plc. *See* Cumings Aff. Ex. D at 1-7 (Allscripts Healthcare Solutions, Inc. proxy statement, dated August 21, 2008); Allscripts-Misys Healthcare Solutions, Inc., Current Report (Form 8-K) (Oct. 10, 2008). In any event, if the Legislature is concerned about the lack of availability of appraisal rights for this type of transaction, the appropriate recourse is to amend the statute.